**UNITED STATES of America, Plaintiff,**

v.

**Ronald J. BOGER, Defendant.**

**No. CR–90–121–JLQ.**

United States District Court,
E.D. Washington.

July 18, 1990.

Supplemental Opinion Aug. 27, 1990.

---

334

Stephanie J. Johnson, Asst. U.S. Atty., Spokane, Wash., for plaintiff.

Bevan J. Maxey, Spokane, Wash., for defendant.

### ORDER RE: SUPPRESSION

QUACKENBUSH, Chief Judge.

A hearing was held on July 6, 1990, and continued on July 12, 1990, on defendant's Motion to Suppress (Ct.Rec. 14). Assistant United States Attorney Stephanie Johnson appeared on behalf of plaintiff; Bevan Maxey appeared on behalf of defendant. Having reviewed the record, heard testimony of witnesses, heard from counsel, and being fully advised in the premises, this Order is intended to memorialize the court's oral ruling in the hearing on this matter.

Defendant's motion seeks suppression of the fruits of a search of his residence on April 23, 1990. The search was conducted pursuant to a warrant which defendant contends was based upon evidence obtained in violation of his constitutional right to privacy in his home. The events which led to the issuance of the warrant involved the entry onto his property by two police officers under a ruse intended to obtain entry to the residence. When there was no response to their ringing of the front door bell, the officers walked to the back of the

residence, at which time they reported smelling marijuana. Defendant contended, *inter alia*, that they could not smell marijuana, that they made an inadequate and illegal check of utility records to determine whether the utility usage was inordinately high, and that they should have been able to determine that the residence had a hot tub, which information should have been included in the affidavit of probable cause.

The first challenge is an alleged lack of foundation in the affidavit in support of probable cause regarding the officers' reliability and experience in sniffing growing marijuana. Although this court agrees that the affidavit did not contain information regarding the officers' reliability and experience in smelling marijuana, nevertheless this court finds that the information submitted to the magistrate contained no misinformation and contained adequate information regarding the officers' general experience with marijuana to establish their ability to recognize the smell of marijuana.

■ The second challenge is the age of a 3–year old tip that defendant was growing marijuana. Defendant did not contend that the tip was false. This court finds that it was not necessary that the affidavit omit mention of the tip. The magistrate could determine the weight, if any, to afford it.

■ The next challenge is the inclusion in the warrant of defendant's statement that he believed marijuana should be legalized. There was no contention that this was a bogus statement. Although it would not be sufficient to support a conclusion that defendant must therefore be growing marijuana, its inclusion in the affidavit was not improper.

■ Defendant's next challenge regards the information provided in the affidavit regarding electric usage at his residence. This court finds that the officers did all that could be reasonably expected. They checked the records of usage for the house in question. They reasonably performed their responsibilities in getting the kilowatt usage, even though their failure to make a written request prior to obtaining the infor-

mation would have been illegal under state law. Federal law, not state law, controls the admissibility of evidence in federal court. If evidence was obtained in a manner which violates neither federal constitutional nor federal statutory law, the magistrate could consider it. There was no indication that they omitted the usage during a period of defendant's ownership through any improper motive. The early usage was used to compare recent usage and to check for substantial differences. There was a substantial change between 1985 and 1990. If they had included additional years it would not have changed the magistrate's decision.

■ With regard to the officers' testimony that they smelled growing marijuana as they entered the back yard, this court finds that the officers were truthful. The prevailing winds in Spokane are from the Southwest. There was no testimony that they were from another quadrant on the relevant date. Therefore, the odor from the vent on the Northwest corner soffit would move toward the East where the officers came around the corner of the house.

■ As for the officers' use of a ruse to attempt to gain entry to the house, this court finds that the purpose of the ruse was to try to obtain incriminating evidence. In *United States v. Bosse*, 898 F.2d 113 (9th Cir., *amended* June 15, 1990), the court held that an officer can conceal his identity to obtain an invitation to enter a home, albeit if he does enter, the entry must be limited to the purpose contemplated by the suspect. In the instant case, the officers did not disclose that they were police officers, and they did not actually enter the house; therefore, there is no issue of their having exceeded the scope of the consent.

This court finds that the officers were at defendant's residence for investigatory purposes, to obtain incriminating evidence against him. There is nothing wrong with that. This court also finds that they were at the front door for not more than 1 minute before starting toward the back yard for the purpose of knocking on the back door and checking for suspicious evi-

dence, including looking into the house through the rear slider. The rear yard was fenced on both sides, and halfway across the back. While there was no fence blocking access along the side of the house, the access was narrow. There were round concrete blocks along the side of the house connecting the front to the back. Behind the rear yard was a field where crops are customarily grown. There is no road separating defendant's yard from the field.

This court finds serious questions exist as to whether the officers violated the curtilage when they entered the back yard of defendant's residence. They did not smell marijuana until they walked around the Northeast corner of the house into the back yard. Therefore this court finds it appropriate to reserve ruling on defendant's motion to suppress in order to afford the parties additional time to brief the curtilage issue. Accordingly,

IT IS HEREBY ORDERED:

1. Defendant's Motion to Suppress (Ct. Rec. 14) IS HEREBY RESERVED.

2. The Government's memorandum shall be filed and served on or before July 27, 1990. Defendant's memorandum shall be filed and served within 10 days of receipt of the Government's brief.

3. Trial briefs, requested voir dire, and proposed jury instructions shall be filed and served on or before August 13, 1990.

4. The trial date originally scheduled to commence July 23, 1990 IS HEREBY STRICKEN. Jury trial shall commence at 10:30 a.m. on August 20, 1990, in Spokane, Washington.

5. Due to the importance of the curtilage issue, this court finds that the ends of justice served by granting a continuance outweigh the best interest of the public and the defendant in a speedy trial; therefore, pursuant to 18 U.S.C. § 3161(h)(8)(A), the period from July 23, 1990, the original trial date, until August 20, 1990, the rescheduled trial date, is HEREBY DECLARED EXCLUDABLE for purposes of computing time under the Speedy Trial Act.

IT IS SO ORDERED.

## SUPPLEMENTAL OPINION

This matter came regularly on for hearing on the 6th day of July, 1990, and concluded on July 12, 1990, on the defendant's Motion To Suppress the evidence obtained from the basement of his residence. Subsequent to the evidentiary hearing, counsel were given the opportunity to submit additional authorities on the curtilage issue.

The sole and critical remaining issue is whether the police officers violated the curtilage of the defendant's home, when they entered his backyard without cause and without a search warrant. While the factual issues are not really in dispute, it is important that they be set forth since the curtilage issue is to be determined from the specific facts involved in this case.

## FINDINGS OF FACT

On April 23, 1990, two Spokane County Sheriff's Office detectives were in an unmarked car in the defendant's neighborhood when they decided that they would attempt to gain entry to the defendant's house through the ruse of asking to use the telephone. The detectives had no reasonable suspicion that the defendant was conducting illegal activities in his house. The detectives were aware that three years prior thereto, the defendant's brother had been arrested for growing marijuana and that at that time the defendant had allegedly advocated the legalization of the use of marijuana.

The defendant lived in a nice single family residential area at E. 22321 Olympic Avenue, in Spokane, Washington. He resided in a single family home as shown in Exhibits 1 through 6. The front door faces on Olympic Avenue. The residence is bordered on each side by similar single family residences. Each of the back sideyards is enclosed by sight-obscuring fences five to six feet tall. The backyard is a well-maintained grass yard. A small decorative fence crosses approximately one-half of the rear property line. An open field adjoins the rear (north) property line. The east side of the house is landscaped with decora-

tive rock and small evergreen plantings. In the east side landscaping there are small poured concrete circles which the owner might walk on to pass through the landscaping to the rear of the house. A small opening of approximately five feet exists between the east side of the house and the fence. The rear of the house does not have a formal back door. Instead there is a raised patio and the house has a sliding door which opens onto the raised patio. As hereinafter stated, the rear yard of the residence is such that a reasonable person would believe it was private and not open to the public. The fences in the backyard give a stranger the impression that the back of the house is private.

Pursuant to their plan, Detectives Madsen and Van Leuven parked their vehicle in the driveway of the house and Detective Van Leuven walked to the front door of the house and knocked. No-one responded to the knock. The detectives remained at the front door only momentarily. The detectives then decided to go into the backyard of the residence. One of the principal reasons for being at the residence and going into the backyard was to see if they could smell marijuana. The detectives had previously obtained search warrants for other residences based upon their having smelled marijuana from the outside of a house. The detectives did not smell marijuana while they were in the front of the house.

The true purpose of the detectives in going into Mr. Boger's backyard was to obtain evidence against Mr. Boger. At this time, they had no reasonable suspicion of any criminal activity being conducted in the backyard or the house. The detectives' only purpose in going into the backyard was to obtain evidence. The detectives walked across the landscaping on the east side of the house to the narrow opening between the house and the fence. They entered the backyard area through that opening. While in the backyard area adjacent to the patio, one or both of the detectives smelled marijuana. There was no marijuana growing in the backyard. The marijuana was growing in the basement.

Detective Madsen then walked up on the patio and knocked on the sliding glass door at the rear of the house. Mr. Boger opened the door and asked the detectives what they were doing in his backyard. They informed him they were looking for a car and asked to use the telephone. Mr. Boger rejected that request and asked the detectives to leave his property. Based upon the smell of marijuana and comparative electrical usage figures, the detectives obtained a search warrant for the Boger residence. The search warrant could not have been issued without the claimed smell of marijuana evidence. Execution of the search warrant revealed a marijuana grow operation in Mr. Boger's basement.

The defendant has seriously challenged the claim of the detectives that they were able to smell marijuana while in the Boger backyard. The surrounding neighbors who had previously been at the Boger residence through express or implied invitations, testified that they had never smelled marijuana. The neighbors were credible witnesses and the court believes their testimony. However, the detectives were also credible witnesses and the court finds that the detectives believed they were smelling marijuana when they were in Mr. Boger's backyard.

## DISCUSSION

As stated, the critical issue is whether Mr. Boger's backyard was within the curtilage of his home and the detectives violated the Fourth Amendment when they entered Mr. Boger's backyard without invitation and without a search warrant for the purpose of obtaining incriminating evidence against Mr. Boger.

Only recently, the Ninth Circuit has again emphasized the sanctity of the home, which includes its curtilage.

Nowhere is the protective force of the fourth amendment more powerful than it is when the sanctity of the home is involved. *Boyd v. United States*, 116 U.S. 616, 630 [6 S.Ct. 524, 532, 29 L.Ed. 746] (1886); *United States v. Shaibu*, 895 F.2d 1291, 1293, (9th Cir.1990; *United States v. Winsor*, 846 F.2d 1569, 1574

(9th Cir.1988) (en banc). The sanctity of a person's home, perhaps our last real retreat in this technological age, lies at the very core of the rights which animate the amendment. Therefore, we have been adamant in our demand that absent exigent circumstances a warrant will be required before a person's home is invaded by the authorities. *United States v. George*, 883 F.2d 1407, 1411 (9th Cir. 1989).

*Los Angeles Police v. Gates*, 907 F.2d 879, 884, (9th Cir.1990).

In *United States v. Dunn*, 480 U.S. 294, 300, 107 S.Ct. 1134, 1139, 94 L.Ed.2d 326 (1987), the Supreme Court reaffirmed that the Fourth Amendment protects the curtilage of a house and ... "the extent of the curtilage is determined by factors that bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself." The *Dunn* court identified four principal factors that should be applied in determining what portion of the property is included with the curtilage of the home. These factors are:

1. The proximity of the area claimed to be curtilage to the home;

2. Whether the area is included within an enclosure surrounding the home;

3. The nature of the uses to which the area is put;

4. The steps taken by the resident to protect the area from observation by people passing by.

Applying these factors to the specific facts of this case, it is clear that the area of Mr. Boger's backyard where the detectives were located is within the curtilage of the home. The area was immediately adjacent to the residence. The area was enclosed with sight obscuring fences on the east and west, and by the house on the south. An unoccupied open field was to the north. The area in question was obviously used by the resident as part of the home. An outside patio was located on the rear of the home and the backyard was in grass and landscaping. Clearly the resident had taken appropriate steps to protect the area from observation on three sides and an

unoccupied open field was on the fourth side.

For most suburban residents, the sanctity of the backyard is as important as that of the house itself. One of the real benefits of owning a residence such as Mr. Boger's is the right of the owner to spend time in his backyard without interruption from traffic or trespassers. Any reasonable property owner in Mr. Boger's area would not expect to find or allow strangers to invade his backyard.

The government cites the recent decision of this court in *United States v. Brady*, 734 F.Supp. 923 (E.D.Wash.1990). The facts in the *Brady* case, which is now on appeal, are contrary to those in this case. *Brady* involved a rural farm residence with no fenced backyard. At issue was whether the front door of an adjoining building with an open front door was protected from police officers going upon the porch for the purpose of knocking on the door. Such a circumstance is comparable to the officers going to the front door of the Boger residence and knocking on the door. Such conduct was permissible in *Brady* and also in the instant case. What is not permitted in this case is for the officers to go into a protected backyard area which under all tests is part of the curtilage of the residence.

The backyard of a house has repeatedly been held to be within the curtilage of a house and thereby protected from a warrantless search under the Fourth Amendment. *United States v. Van Dyke*, 643 F.2d 992, 994 (4th Cir.1980); *Fixel v. Wainwright*, 492 F.2d 480, 483 (5th Cir.1974); *United States v. Davis*, 423 F.2d 974, 976 (5th Cir.1970). Recent "overflight" cases addressed by the Supreme Court recognize that the backyard is protected from physical intrusion by the police. In *California v. Ciraolo*, 476 U.S. 207, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1985), at issue was an overflight search of an area immediately adjacent to a suburban home. The Court found that "[t]his close nexus to the home would appear to encompass this small area within the curtilage." *Id.* at 213, 106 S.Ct. at 1812. Because the search was conducted in a physically nonintrusive manner and

took place within navigable airspace, *Id.*, this type of search of the curtilage was held to be outside of the protection of the Fourth Amendment. *Id.* at 215, 106 S.Ct. at 1813. In its most recent overflight case, *Florida v. Riley*, 488 U.S. 445, 109 S.Ct. 693, 102 L.Ed.2d 835 (1989), a plurality of the court stated that the home and its curtilage are not necessarily protected when there is no physical invasion. *Id.* at 449, 109 S.Ct. at 695. Both overflight cases implicitly hold, however, that a house's backyard is within the curtilage and is thereby protected from physical intrusion by police officers.

For the reasons given above, the search was illegal; thus, the defendant's motion IS HEREBY GRANTED.

IT IS HEREBY ORDERED:

1. The defendant's Motion to Suppress Evidence (Ct.Rec. 14) IS HEREBY GRANTED. Since the search warrant was the sole basis for the acquisition of evidence against the defendant, the Indictment must be and IT IS HEREBY DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.