## UNITED STATES of America

### v.

### David TITEMORE

### No. 2:03–CR–67–01.

United States District Court,
D. Vermont.

Sept. 14, 2004.

---

John M. Conroy, Esq., Burlington, VT, for Plaintiff.

Elizabeth Mann, Esq., Burlington, VT, for Defendant.

## MEMORANDUM OPINION AND ORDER

SESSIONS, Chief Judge.

On May 22, 2003, the grand jury returned a three count indictment against David Titemore. Titemore was charged with possessing a Marlin .22 caliber rifle on April 28, 2003, having been convicted of a felony offense in violation of 18 U.S.C. § 922(g)(1). He was also charged with possession of a firearm by a person previously convicted of a misdemeanor crime of domestic violence in violation of 18 U.S.C. § 922(g)(2) and with possession of a stolen firearm in violation of 18 U.S.C. § 922(j). On August 19, 2004, the grand jury returned a superceding indictment with the same charges.

Titemore has filed a motion to suppress evidence from a search of his residence on April 28th as well as oral statements made to Trooper Thad Baxter at his residence in Franklin, Vermont. For the reasons stated below, the Court hereby denies Titemore's motion to suppress.

Vermont State Police responded to a report of a property dispute between David Titemore and his neighbor, Kevin Lothian on April 27, 2003. Apparently, Titemore had assaulted Lothian's employee, Michael Loisell, by striking him with the bucket of a tractor. Titemore was cited to appear in the Vermont District Court on a simple assault charge.

On the following day, Lothian telephoned Vermont State Police twice to report that his residence was vandalized. The door had been kicked in, a pool table was damaged and a .22 Marlin rifle and ammunition had been stolen. Lothian then made his first call to the Vermont State Police, but there were no troopers available to speak with him. Once Lothian discovered the vandalism and theft, he waited in his residence with a friend and actually observed Titemore and another individual arrive at his residence and engage in further vandalism. Trooper Baxter received the second call from Lothian and soon thereafter responded to the scene. He first interviewed Lothian and his friend at the Lothian residence on Patton Shore Road. They informed Trooper Baxter that they had watched Titemore attempt to enter the residence. They told Baxter that Titemore was at his home up the street, armed and probably intoxicated.

There are two entryways to the Titemore residence. The first, a sliding door along Patten Shore Road, is on the east side of the house at a porch area. The second entrance, on Titemore Woods Road, is a small door on the west side of the house between the garage and the house. According to Lothian, this entrance had a motion sensing light.

Baxter walked down Patten Shore road and noticed the porch and sliding door. The porch area is clearly visible from the road. There is a rail fence along Patten Shore Road that partially restricts access to the porch. The rail fence is essentially decorative. There is also a garden in the area of the path from Patten Shore Road to the porch, although due to that time of year little vegetation would restrict access. There was a dysfunctional doorbell and a lamp converted to a plant holder on opposite sides of the sliding door. The deck was used as an outside sitting area by the defendant. Although some views from the porch were restricted by trees, there were unrestricted views of a neighbor's house and the lake. Some neighbors had approached the residence by invitation in the past by following the same path taken by

Trooper Baxter. There were no signs restricting access to the porch in any way.

Baxter observed a TV turned on in the room adjacent to the porch. He chose to approach the residence at the sliding door for a number of reasons. The TV being on suggested to him Titemore would likely be present in that room. Baxter was also concerned about a motion sensing light, since that would make him particularly vulnerable. The light would permit Titemore to observe the officer without Baxter being able to see Titemore.

The glass door separating the porch and the inside of the residence was left open, although the screen door remained closed. Baxter approached the door and saw the Defendant sitting in a chair. Baxter introduced himself, shining a light on his uniform. Baxter had learned Titemore was a convicted felon prior to approaching his house. From the porch, the trooper saw a .22 caliber rifle near the Defendant. The trooper reports that Titemore was acting strangely, sitting is his chair and staring "through" the trooper. Baxter asked the Defendant if he was David Titemore. Titemore nodded slowly that he was.

Baxter asked Titemore to come out, which he agreed to do. Baxter detected an odor of alcohol emanating from Titemore's breath and that his speech and thought processes appeared to be slowed. Baxter asked Titemore if he had ever been convicted of a felony; Titemore said that he might have been once. He asked him what kind of gun was in the home and defendant responded that it was a Marlin. He told Titemore he could not possess a rifle and he was going to take it. He asked if that was OK and Titemore said yes. Baxter walked into Titemore's residence and took the rifle. After he returned to the porch, Baxter asked Titemore how to unload the rifle. Baxter then removed all the bullets from the rifle.

Baxter asked Titemore about the vandalism at Lothian's camp. Titemore replied that he had been at home all day and had not visited the camp. Titemore also claimed that Lothian had struck him in the face on the previous evening. Baxter issued Titemore a citation to appear in court for the offence of unlawful mischief and unlawful trespass. Baxter then left the residence, maintaining possession of the rifle and the bullets.

■ All parties agree the Fourth Amendment applies to the curtilage surrounding a residence. *United States v. Dunn*, 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987). They also agree that knock and talk is a valid investigative tool, often requiring officers to approach a residence to request to speak with an individual. *United States v. Jones*, 239 F.3d 716, 720 (5th Cir.2001). Under the rule permitting knock and talk visits, "no Fourth Amendment search occurs when police officers who enter private property restrict their movements to those areas generally made accessible to visitors." *United States v. Reed*, 733 F.2d 492, 501 (8th Cir.1984).

■ Titemore contends that Trooper Baxter exceeded the scope of a legitimate "knock and talk" visit because he did not approach the main entrance to the residence. Titemore argues that the small door on the west side of his residence is the only legitimate access point for visitors. In support of this claim, Titemore points to the fact that this doorway is accessible from the driveway. Titemore also notes that the sliding door by the deck is not accessible from a walkway.

■ Titemore may well be correct that the door on the west side of his residence is more typical of a main entrance. Nevertheless, the law does not require an officer to determine which door most closely

approximates the Platonic form of 'main entrance' and then; after successfully completing this metaphysical inquiry, approach only that door. An officer making a "knock and talk" visit may approach any part of the building that where uninvited visitors could be expected. *See United States v. Daoust*, 728 F.Supp. 41, 46 (D.Me.1989), *aff'd*, 916 F.2d 757 (1st Cir. 1990) ("police with legitimate business may enter the areas of the curtilage which are impliedly open to use by the public") (quotation marks and citation omitted); *see also United States v. Raines*, 243 F.3d 419, 421 (8th Cir.2001) (noting that it may sometimes be reasonable for an officer to move away from the front door while attempting to contact the occupants of a residence). In this case, it was reasonable for Baxter to approach the residence at the sliding door.

Many factors support this conclusion. The sliding door at the porch is clearly visible from two public streets. In fact, the sliding door is *more* open to public view than the door on the west side of the house. Moreover, there is no barrier between the porch and Titemore Woods Road. The Supreme Court has noted that "whether the area is included within an enclosure surrounding the home" and "whether the resident has taken steps "to protect the area from observation by people passing by" are both important factors to consider when deciding whether an area is curtilage. *Dunn*, 480 U.S. at 301, 107 S.Ct. 1134. Thus, these factors are highly relevant to whether it was reasonable for Baxter to approach the sliding door for a knock and talk visit.

It is also worth noting that, as he approached the house, Baxter observed the light of a television through the sliding door. This made that door even more appropriate as a place to try to contact the occupant. Finally, the sliding door has a door bell, albeit a non-functioning one, in-dicating that at some point it was anticipated that visitors might call there.

Titemore cites *United States v. Karagozian*, 715 F.Supp. 1160 (D.Conn.1989), *aff'd*, 914 F.2d 239 (2d Cir.1990) and *United States v. Boger*, 755 F.Supp. 333 (E.D.Wash.1990) to support his view that Baxter's actions violated the Fourth Amendment. Neither case supports this view. In both cases, the court placed special emphasis on the fact that officers had approached doors at the rear of a house. *See Karagozian*, 715 F.Supp. at 1164; *Boger*, 755 F.Supp. at 337 (noting the inaccessibility of the back yard and the fact that the "fences in the backyard give a stranger the impression that the back of the house is private"). This case presents very different facts. Baxter did not approach a back door in an enclosed yard. He was confronted by a house with no front door and simply chose one of the side doors. Moreover, unlike the back doors at issue in the cases cited by Titemore, the sliding door in this case was not enclosed or blocked from public view.

■ Having determined that Baxter was properly at the sliding door, it is not difficult to determine that seizure of the firearm was then justified as an exigent circumstance. A warrantless entry does not violate the Fourth Amendment if circumstances suggest a threat to the safety of the general public or police officers. *See, e.g., Koch v. Town of Brattleboro, Vt.*, 287 F.3d 162, 169 (2d Cir.2002). Here, Baxter was aware of Titemore's felony record and had probable cause to arrest him for being a felon in possession of a firearm. More importantly, Baxter had cause to believe that Titemore was intoxicated, had engaged in violent behavior earlier in the evening and posed a possible threat to Baxter himself, especially with a firearm nearby. There was evidence to suggest that the firearm was stolen from Lothian

earlier in the evening. Also, the defendant appeared to be seething with anger. Exigent circumstances exist in the light of the state of intoxication and the ability of the defendant to reach for the gun.

Finally, Titemore seeks suppression of the statements he made to Baxter while on the deck. Titemore argues that *Miranda* warnings were required. The Court disagrees. *Miranda* warnings were not required because the statements were not the product of custodial interrogation. *See Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The test used to determine whether a defendant is in custody asks whether a reasonable person would have understood himself to be subject to restraints comparable to those associated with a formal arrest. *United States v. Mitchell,* 966 F.2d 92, 98 (2d Cir.1992). The test focuses on whether police indicated to the defendant that he was not free to leave. *Id.* Here, Trooper Baxter did not tell Titemore that he was not free to leave. Baxter did not employ any restraint nor did he brandish his weapon. Moreover, after issuing a citation, Baxter left the residence without arresting Titemore. Thus, there is no indication that Titemore was in custody and *Miranda* warnings were not required.

For the foregoing reasons, Titemore's motion to suppress evidence and statements is denied.