Peter **MADDALONE**, Plaintiff–Appellant,

v.

**LOCAL 17, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, and District Council, United Brotherhood of Carpenters, Defendants–Appellees.**

Docket No. 97–7935.

United States Court of Appeals,
Second Circuit.

Argued March 9, 1998.

Decided Aug. 10, 1998.

Richard A. Levy, New York City (Veronica Villanueva, Levy, Ratner & Behroozi, P.C., of counsel), for Plaintiff–Appellant.

Daniel E. Clifton, New York City (Lewis, Greenwald, Clifton & Nikolaidis, P.C., of counsel), for Defendants–Appellees.

Before OAKES, WALKER and MAGILL,* Circuit Judges.

OAKES, Senior Circuit Judge:

Peter Maddalone appeals from a judgment of the United States District Court for the Southern District of New York, John S. Martin Jr., *Judge*, dismissing his claims alleging that he had been dismissed as shop steward and fired from a job in violation of (1) the union's duty of fair representation under § 301 of the LMRA, 29 U.S.C. § 185 (1994), and (2) his free speech and due process rights protected by §§ 101 and 609 of the LMRDA, 29 U.S.C. §§ 411 and 529 (1994). Maddalone sought injunctive relief, including reinstatement, damages, and attorney fees.

The district court dismissed Maddalone's claims with prejudice in an opinion issued on October 2, 1996. The court ruled that Maddalone's termination claims, even if true, were not actionable under the LMRDA because the termination allegedly resulted from ad hoc retaliation by individual union officers instead of organized discipline by the union. *Maddalone v. Local 17, United Bhd. Of Carpenters*, No. 95 Civ. 2112(JSM), 1996 WL 562986, at *4 (S.D.N.Y. Oct. 3, 1996). The court also found that Maddalone's removal from his shop steward position did not affect his rights as a union member, as is required to state a claim under the LMRDA, and did not constitute a breach of the union's duty of fair representation under the LMRA. *Id.* at *4, 5. Finally, the court found Maddalone's other LMRA claims barred by Maddalone's failure to exhaust internal union remedies. *Id.* at *7. Maddalone appeals pursuant to 28 U.S.C. § 1291 (1994).

* The Honorable Frank J. Magill of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

## I. Background

Maddalone is a journeyman carpenter and a member and elected Vice President of Local 17. In July of 1994, Maddalone was hired through Local 17 by Cord Construction Corporation ("Cord") to work at a job site on Audubon Avenue in Manhattan. Maddalone was appointed shop steward at the site when he was hired. According to industry custom, the shop steward is the first employee to be hired and the last to be laid off when a job is complete.

Prior to December 29, 1994, Local 17 was staffed by a business manager, Enrico Ruotolo, and three business agents. On December 29, Maddalone learned that the three business agents were being laid off, purportedly for financial reasons. Maddalone objected to the layoff decision for two reasons. First, he believed that the union's membership of nearly two thousand would be inadequately served after the layoffs, and, second, on the basis that one of the agents was the union's sole African–American representative. In January 1995, Maddalone participated in two demonstrations in front of the District Council office to protest the layoffs.

After the second demonstration, Maddalone attended a meeting of Local 17's Executive Board. At that meeting, Local 17's business manager, Ruotolo, stated that the District Council President, Fred Devine, had directed that anyone who had participated in the demonstrations should be ordered off the job. Maddalone asked if he were also to be removed from his job, and Ruotolo answered "yes."

The next day, January 10, 1995, Maddalone reported to the Audubon Avenue site at his regular time. He was told by a coworker, Tony Piscopo, that Piscopo was now acting as shop steward and that Maddalone was being laid off. Maddalone then requested to speak with Ruotolo. Ruotolo came to the job site and informed Maddalone that he was being removed as shop steward but that he was not being laid off. Two hours later, however, a Cord foreman handed Maddalone a paycheck dated from the day before, and informed Maddalone that he was being let go.

On February 7, 1995, Maddalone's attorney sent letters to Devine and Ruotolo, claiming that Local 17 and the District Council had caused Maddalone's termination in violation of federal law. The letters urged the Defendants to reinstate Maddalone as shop steward and to have Maddalone reinstated at Cord with backpay. The District Council responded by phone, denying that it had acted illegally or improperly. Local 17 responded in a letter dated February 27, 1995, stating that Maddalone's removal as shop steward had been for cause due to his excessive absenteeism, denying any role in Maddalone's termination by Cord, and asserting that Cord had laid off Maddalone because the job was winding down. Counsel for Local 17 also stated that even if Maddalone had been removed as shop steward due to his participation in a political demonstration, such an action did not provide a basis for legal action against the Local.

Maddalone then filed a complaint against Local 17, the District Council, and Cord, alleging violations of the LMRA, the LMRDA, and breach of contract. Maddalone alleged that the union had violated its duty of fair representation pursuant to § 301 of the LMRA by inducing Cord to fire him and by removing him as shop steward. He claimed that the same conduct violated his free speech and due process rights as defined by §§ 101 and 609 of the LMRDA.

Each defendant filed a motion to dismiss. The district court, in an opinion issued on October 3, 1996, dismissed Maddalone's claims against Local 17 and the District Council, but denied Cord's motion. The court found that Maddalone had failed to state a claim under the LMRDA because his termination from the Cord job did not constitute an official act of "discipline" by the union, and his removal as shop steward did not implicate his rights as a union member. Maddalone's fair representation claims were dismissed due to his failure to exhaust internal union remedies. Maddalone later voluntarily dismissed his claims against Cord pursuant to settlement.

## II. Discussion

On appeal, Maddalone contends that (1) the district court erroneously overlooked

his free speech claims brought pursuant to § 101(a)(2) of the LMRDA; (2) his removal as shop steward does state a claim under the LMRDA; (3) the court erred in determining that his termination from Cord was not actionable as "discipline" by the union; and (4) he is entitled to punitive damages on his LMRDA claims. Finally, he appeals the district court's determination that he should have exhausted his internal union remedies. We review Maddalone's first four claims under a de novo standard, as they raise questions of law. However, we review the district court's decision with regard to the exhaustion of remedies for abuse of discretion. *See Clayton v. International Union, UAW*, 451 U.S. 679, 689, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981) (stating that the decision whether to excuse a plaintiff's failure to exhaust internal remedies under the LMRA is within the discretion of the district court).

## A. Free Speech Claims Under the LMRDA

■ This appeal concerns the scope of the membership rights protected by the LMRDA. The LMRDA was enacted to encourage democratic self-governance in unions and to curb widespread abuses and corruption among union leadership. *See Franza v. International Bhd. of Teamsters, Local 671*, 869 F.2d 41, 44 (2d Cir.1989). Section 101(a)(2) of Title I of the LMRDA, the "Bill of Rights of Members of Labor Organizations," guarantees to union members "the right to meet and assemble freely . . . and to express any views, arguments, or opinions" concerning candidates and union policies. 29 U.S.C. § 411(a)(2) (1994). Section 609 protects a member from being fined, suspended, expelled or "otherwise disciplined" for exercising any right guaranteed by Title I, and § 101(a)(5) states that a member may not be disciplined without notice or a hearing. 29 U.S.C. §§ 529, 411(a)(5) (1994). Section 102 of the LMRDA provides that "[a]ny person whose rights secured [by Title I] have been infringed . . . may bring a civil action in a [federal] district court . . . for such relief . . . as may be appropriate." 29 U.S.C. § 412 (1994).

■ Maddalone asserts that the defendants caused him to be fired and removed him from his position as shop steward because of his dissident activities. Although Maddalone included this free speech claim in both his original and Amended Complaint, the district court evaluated only his due process claim brought under §§ 101(a)(5) and 609 of the LMRDA. The free speech and due process rights guaranteed by the LMRDA are distinct from one another, and it is well established that a union member may bring a suit to redress a violation of § 101(a)(2) free speech rights even if no due process violation is shown. *See Finnegan v. Leu*, 456 U.S. 431, 439, 102 S.Ct. 1867, 72 L.Ed.2d 239 (1982); *Black v. Ryder/P.I.E. Nationwide, Inc.*, 970 F.2d 1461, 1468 (6th Cir.1992). The district court, therefore, erred in not addressing Maddalone's separate § 101(a)(2) claim.

■ Section 101(a)(2) protects union members from direct interference with union membership rights in retaliation for their expression of opinions concerning union activities. *See Cotter v. Owens*, 753 F.2d 223, 228 (2d Cir.1985). Where a § 102 claim is based on wrongful termination, we have said that "the test under Title I is whether membership rights in the union were directly infringed by action taken with respect to the union member's employment status." *Franza*, 869 F.2d at 46. The defendants argue that Maddalone's termination and removal as shop steward present no cognizable free speech claim because Maddalone's employment with Cord and his appointed position were unrelated to his rights as a union member.

As to Maddalone's employment with Cord, we disagree. In *Franza*, we stated that "[a]n equal right to jobs allocated by the union referral system is clearly an incident of union membership," and that interference with that right gives rise to a cognizable claim under § 102. *Id.* at 47–48; *see also Phelan v. Local 305 of the United Ass'n of Journeymen*, 973 F.2d 1050, 1063 (2d Cir. 1992) (finding a § 102 violation where a union officer refused to allow the plaintiff member to register for work through the hiring hall); *Vandeventer v. Local Union No. 513*

*of the Int'l Union of Operating Eng'rs,* 579 F.2d 1373, 1378–79 (8th Cir.1978) ("[I]nterference with employment rights constitute[s] a powerful tool by which union leaders [can] control union affairs, often in violation of workers' membership rights."). Causing an employer to fire a union member is not materially different from a union's refusal to refer jobs out on an equal basis. *Cf. Duncan v. Peninsula Shipbuilders Ass'n,* 394 F.2d 237, 239–40 (4th Cir.1968) ("The [LMRDA] does not allow the union to achieve indirectly [through an employer] what it is prohibited to do directly."). Once a union has a member fired, it has ceased to protect the member's interests *qua* member. In such circumstances, it does not matter that the plaintiff has not lost his union membership; such a plaintiff is a union member in name only. We therefore hold that Maddalone's allegation that Local 17 and the District Council caused him to be fired from his job at Cord states a claim for relief under § 102 of the LMRDA. *Cf. Gross v. Kennedy,* 183 F.Supp. 750, 756 (S.D.N.Y.1960) (finding a cause of action under the LMRDA in a wrongful termination case where the union allegedly caused an employee to be removed from his job).

 We also find, although it is a much closer case, that Maddalone's removal as shop steward may also be the basis for a § 102 claim.[1] While the general rule is that status as a union employee or appointed officer is not a membership right within a union and is not protected by the LMRDA, *see Finnegan,* 456 U.S. at 438, 102 S.Ct. 1867, we have recognized an exception where the removal of a union officer was part of "purposeful and deliberate attempt … to suppress dissent within the union." *Schonfeld v. Penza,* 477 F.2d 899, 904 (2d Cir.1973); *Cotter,* 753 F.2d at 229 (2d Cir.1985).[2] This is because "the rights of union members to belong to an open democratic labor organiza-

tion are infringed" when a "dominant group strives to stifle dissent and efforts at reform" through removal of a political opponent from office. *Adams–Lundy v. Association of Professional Flight Attendants,* 731 F.2d 1154, 1158 (5th Cir.1984). To fall within this exception, a plaintiff must present "clear and convincing proof" that her dismissal was "part of a series of oppressive acts by the union leadership that directly threaten the freedom of members to speak out." *Cotter,* 753 F.2d at 229; *see also Schonfeld,* 477 F.2d at 904 (holding that to state a cause of action, the alleged scheme to suppress dissent must be evident either in the established history or articulated policy of the union).

In the past, we have allowed such claims to go forward where the removal of an officer or employee stemmed from longstanding and well-documented patterns of harassment and intimidation. *See Schonfeld,* 477 F.2d at 904 (upholding an LMRDA claim for removal of member from union office on the basis of a lengthy history of intra-union conflict); *Cotter,* 753 F.2d at 229–230 (finding fifteen-year history of litigation between a dissident group and leadership of one union local presented genuine issue as to motive underlying the removal of union committee member). However, a dissenting faction need not endure years of harassment before a § 102 claim will lie. In *Johnson v. Kay,* 860 F.2d 529, 537 (2d Cir.1988), we upheld a § 102 claim based solely on conduct spanning several months, including physical threats and attempts to disrupt meetings and block communications between a union president and her supporters. We found that the plaintiff qualified for the exception because the complaint alleged "more than random acts of individuals directed solely at [the plaintiff] as union President," but "organized attempts by the defendants to prevent union members sympathetic to Johnson from expressing their views." *Id.* at 537.

---

1. Maddalone does not appeal the district court's determination that his removal as shop steward was not actionable under § 301 of the LMRA.

2. The Supreme Court has suggested that an exception to the *Finnegan* rule may exist for non-policymaking officials and employees. *See Finnegan,* 456 U.S. at 441 n. 11, 102 S.Ct. 1867; *Cotter,* 753 F.2d at 227. We have never decided

if in fact such an exception exists, *see Cotter,* 753 F.2d at 227–28, and the district court made no findings as to whether Maddalone's position as shop steward could fall within this exception. Because Maddalone apparently never raised this issue before the district court, we find that it is not properly before us on appeal.

Maddalone has presented sufficient evidence to preserve the issue whether his termination as shop steward was part of a calculated attempt to suppress dissenting views within the union. In his complaint, he alleges that he was removed as shop steward pursuant to the order of District Council President, Fred Devine, that every member who had participated in the protest demonstrations should be taken off his job. Since Maddalone was the elected Vice President of the Local, any action taken against him was likely to send a powerful message to the rank-and-file members. In support of his claim, Maddalone cites the findings of former Judge Conboy, an Investigations and Review Officer appointed to monitor the union pursuant to a consent decree in an earlier RICO action, that cause existed to believe that Ruotolo, acting on advice of the District Council General Counsel Bernard Cohen, removed Maddalone as shop steward and caused his termination from Cord because Maddalone had participated in the demonstrations. Judge Conboy also described a separate attempt by Ruotolo to intimidate a union member who had filed disciplinary charges against Ruotolo. Finally, Maddalone cites the affidavit of Shaun Toner, a former President of Local 17, that representatives and supporters of Devine often disrupted meetings and prevented opposition candidates from speaking to suppress criticism of his leadership within the union. On balance, we find that Maddalone has pleaded sufficient facts that, if true, demonstrate that his removal as shop steward was not ad hoc personal retaliation but was part of a calculated and deliberate scheme to discourage dissent.

## B. Discipline

█ The district court dismissed Maddalone's claims under §§ 101(a)(5) and 609 of the LMRDA because it held that under *Breininger v. Sheet Metal Workers International Association Local Union No. 6*, 493 U.S. 67, 110 S.Ct. 424, 107 L.Ed.2d 388 (1989), Maddalone's discharge and removal as shop steward did not constitute official discipline undertaken on behalf of the union. We agree.

In *Breininger*, 493 U.S. at 91, 110 S.Ct. 424, the Supreme Court found that the phrase "otherwise discipline," found in both §§ 101(a)(5) and 609, did not mean "all acts that deter[ ] the exercise of rights protected under the LMRDA, but, rather, meant instead to denote only punishment authorized by the union as a collective entity to enforce its rules." Thus, the Court found that allegations that two union officers refused to refer a member to jobs through the hiring hall because of his political activity on behalf of a rival did not give rise to a cause of action for improper "discipline" within the meaning of the LMRDA. *Id.* at 94, 110 S.Ct. 424. The complaint in *Breininger* was deficient because it described only "personal vendettas" instead of actions taken by the union as an organizational entity, by a "tribunal," or as a result of a "proceeding" convened by the union. *Id.*

Maddalone attempts to distinguish *Breininger* because here Ruotolo is alleged to have acted on behalf of the union District Council President and because the decision to punish the demonstrators was not carried out sub rosa but was announced at a formal meeting of Local 17's Executive Council. Even if true, such allegations do not support a claim for violations of §§ 101(a)(5) and 609. Assuming Ruotolo was implementing Devine's orders, Devine is not alleged to have been acting on behalf of the union as an official entity to punish the demonstrators for alleged infractions of union rules. Maddalone was, rather, the victim of Devine and Ruotolo's personal campaign to suppress criticism of their leadership. That this punishment was announced at a formal meeting would not change the result. Maddalone does not contend that Local 17's Executive Council had a role in ratifying the decision to terminate the demonstrators. Therefore, the alleged punishment was not the result of an established union disciplinary process, as is required under the statute. *Cf. Schermerhorn v. Local 100, Transport Workers Union*, 91 F.3d 316, 326 (2d Cir.1996) (finding that reprimands issued to plaintiffs after hearings conducted by a union committee and upon a recommendation adopted by the Local Executive Board constituted discipline under the LMRDA).

### C. Punitive Damages

The district court, following *International Brotherhood of Electrical Workers v. Foust*, 442 U.S. 42, 52, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979), held that Maddalone could not sue for punitive damages on his LMRA claim. Maddalone does not contest this ruling on appeal, but argues that he is entitled to request punitive damages on his LMRDA claims. We have previously held that punitive damages are available to deter malicious violations of the LMRDA, *see Morrissey v. National Maritime Union*, 544 F.2d 19, 25 (2d Cir.1976), and nothing in *Foust* changes this rule. *See Doty v. Sewall*, 908 F.2d 1053, 1062 (1st Cir.1990). Furthermore, Local 17 and the District Council concede that punitive damages may be awarded under the LMRDA. Since there is no dispute on this point, Maddalone may certainly request punitive damages on his LMRDA claims.

### D. Exhaustion of Union Remedies

Finally, Maddalone contends that the district court abused its discretion in requiring him to exhaust his remedies under the union's internal grievance procedures. Under both the LMRA and the LMRDA, the requirement that a plaintiff exhaust internal union remedies lies within the court's discretion. *See Clayton*, 451 U.S. at 689, 101 S.Ct. 2088; *Johnson v. General Motors*, 641 F.2d 1075, 1078 (2d Cir.1981). In deciding whether to apply the exhaustion doctrine, a court "must balance the right of union members to institute suit against the policy of judicial noninterference in union affairs." *Johnson*, 641 F.2d at 1079. Three factors are relevant to this inquiry:

> [F]irst, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks ...; and third, whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim.

*Clayton*, 451 U.S. at 689, 101 S.Ct. 2088.[3] The union bears the burden of establishing that its procedures meet these requirements. *Johnson*, 641 F.2d at 1079.

The Constitution of the United Brotherhood of Carpenters and Joiners of America ("the International") contains a grievance procedure under which a member with any grievance may call upon the General President. That provision, section 53(G), provides in pertinent part:

> "Any member ... having any grievance may appeal to the General President within thirty (30) days from the date the grievance occurred.... All grievances ... shall be in writing and shall contain a brief statement of the grounds relied upon."

According to James T. Patterson, General Secretary–Treasurer of the International, no formal procedures exist for invoking section 53(G), and a simple letter to the General President is sufficient.

The district court found that section 53(G) was adequate, reasonable, and not futile under the circumstances. Although the court found that Maddalone could not reasonably have been expected to ask Local 17 or the District Council to take any further action on his behalf, the court found no reason to assume that the General President of the International would not have given his claims an impartial review. *Maddalone*, 1996 WL 562986, at *6. Furthermore, the district court found the process described in section 53(G) to be simple, straightforward, and capable of providing Maddalone with adequate relief because the General President could have reactivated his grievance by appointing an independent representative to represent him in arbitration with Cord. *Id.* The court thus

---

3. Although the Court in *Clayton* articulated these factors in the context of § 301 claim, they are generally relevant to whether exhaustion should be required under the LMRDA. *See Johnson*, 641 F.2d at 1079 ("If intraunion remedies do not provide a reasonable and adequate opportunity for full relief, or if resort to them would be futile, exhaustion should not be required."); *Stevens v. Northwest Indiana Dist. Council, United Bhd. of Carpenters*, 20 F.3d 720, 733 n. 31 (7th Cir.1994) ("[G]enerally the *Clayton* considerations are proper guideposts to aid the exercise of exhaustion-excusal discretion under Title I of the LMRDA.").

declined to excuse the exhaustion requirement for Maddalone's breach of fair representation claims under § 301 of the LMRA. *Id.* at *7. Having held that Maddalone had no viable claims under Title I of the LMRDA, the district court did not address whether the exhaustion requirement should apply to those claims as well.

■ Maddalone contends on appeal that the procedures mandated by section 53(G) were futile because the General President would have been reluctant to expose the wrongdoings of Local 17 and the District Council through arbitration with the employer. This claim is based on speculation, however. Had Maddalone used section 53(G) and found the General President unwilling to pursue or investigate his claims, he would certainly have valid recourse to the courts. Since he never gave the International this chance to remedy the alleged misconduct internally, we cannot know that the International would have ignored Maddalone's claims, and therefore find no basis to overrule the district court's determination on this ground.

■ Maddalone also claims that it would be unreasonable to expect him to have complied with section 53(G) because neither the Local nor the District Council informed him of the existence of the procedure when he wrote to ask them to address his grievance. In *Johnson,* we held that a union can demonstrate the reasonableness of its procedures by showing that "Union members have been informed of the availability of internal appellate remedies and that these procedures are not particularly cumbersome or confusing." 641 F.2d at 1080. Here, section 53(G) was contained in the union's Constitution and Rules. It provided a straightforward procedure whereby members could set forth any grievance to the General President. We do not find that the district court abused its discretion in determining that "[a]s vice-president of Local 17 and a former shop steward, Maddalone reasonably should have been aware of the relatively simple procedures." *Maddalone,* 1996 WL 562986, at *6.

■ Finally, Maddalone argues that the General President could not have provided Maddalone with the relief he sought, including reinstatement at Cord and compensatory and punitive damages. *See Johnson,* 641 F.2d at 1079 ("Adequacy ... must be demonstrated by showing that the disgruntled employee can be fully redressed for his injuries...."). On a § 301 claim for breach of the duty of fair representation, a member can receive full redress either through the award of relief through internal procedures or through reactivation of the member's grievance. *See Clayton,* 451 U.S. at 692 & n. 21, 101 S.Ct. 2088 ("[B]y reactivating the grievance, the union might be able to rectify the very wrong of which the employee complains...."). As the General President could have reactivated Maddalone's grievance and appointed an independent representative for him to pursue arbitration with Cord, the district court correctly found section 53(G) to afford adequate relief for Maddalone's LMRA claim.

■ We are not convinced, however, that Maddalone could have received adequate relief on his LMRDA claims through resort to section 53(G). Under the LMRDA, Maddalone may seek both compensatory and punitive damages. Local 17 and the District Council have produced no evidence as to what remedies the General President has at his disposal. Accordingly, the union has failed to establish that its procedures could have "fully redressed" Maddalone for his alleged injuries under Title I of the LMRDA. *See Barbara v. New York Stock Exchange, Inc.,* 99 F.3d 49, 57 (2d Cir.1996) (refusing to require exhaustion where the plaintiff sought primarily monetary damages and administrative remedies could not provide such relief); *Achilli v. John J. Nissen Baking Co.,* 989 F.2d 561, 564 (1st Cir.1993) (finding exhaustion not required where "the Local failed to prove the existence of an internal damage remedy."). Maddalone is therefore entitled to proceed with his LMRDA claims despite his failure to invoke the procedures set out in section 53(G).

### III. Conclusion

For the reasons stated above, we reverse the district court's dismissal of Maddalone's LMRDA claims under § 101(a)(2), but affirm

the dismissal of Maddalone's LMRA claims and due process claims under the LMRDA, and remand for further proceedings consistent with this opinion.