Salvatore J. LaSCALA, and Douglas A. Janese, individually and as members of Local 280, and as Trustees or former Trustees of the Niagara–Genesee & Vicinity Carpenters Local 280 Welfare Fund; Ronald D. Tower, Russel A. Colosi, Patrick M. Carmody, Tobin J. Gormley and Christopher Shakarjian, individually and as members of Local 280, and as Trustees or former Trustees of the Niagara–Genesee & Vicinity Carpenters Local 280 Pension Fund; and John C. Lunney, Richard J. Marino and Michael R. Weber, Individually and as members of Local 280; Plaintiffs,

v.

Santo S. SCRUFARI, individually and as Plan Manager of the Niagara–Genesee & Vicinity Carpenters Local 280 Welfare and Pension Funds; Gordon J. Knapp, David Fay, Richard L. Covatta, John B. Jones, Michael O'Brien, Christopher M. Scrufari, and Robert Williams, individually, as officers or former officers of Local 280, and as Trustees or former Trustees of the Niagara–Genesee & Vicinity Carpenters Local 280 Welfare and Pension Funds; Angelo Massaro, Dominic P. Massaro and George R. Weidert, as Trustees of the Niagara–Genesee &

Vicinity Carpenters Local 280 Welfare and Pension Funds; and Niagara–Genesee & Vicinity Carpenters Local 280 Welfare Fund and Niagara–Genesee & Vicinity Carpenters Local 280 Pension Fund; Defendants.

No. 93–CV–982C.

United States District Court,
W.D. New York.

March 25, 2000.

Burd & McCarthy (Timothy A. McCarthy, of Counsel), Buffalo, New York, NY, for Plaintiffs.

Chamberlain, D'Amanda, Oppenheimer & Greenfield (Michael T. Harren, of Counsel), Rochester, NY, for Defendants.

## DECISION AND ORDER

CURTIN, District Judge.

## INTRODUCTION

Plaintiffs are members and trustees of Niagara–Genesee & Vicinity Carpenters Local 280 ("Local 280") who have brought an action for damages and injunctive relief against certain trustees, officers, and managers of Local 280's welfare and pension plans ("the plans"). On April 14, 1998, defendants Santo S. Scrufari ("Scrufari") and Gordon J. Knapp ("Knapp") moved for summary judgment. Items 103–107. Plaintiffs submitted various papers in opposition to defendants' motion. Items 109–114. On December 8, 1998, after having heard oral argument, the court ordered the parties to make further submissions. Item 119. After the parties complied with the court's order, the court took the matter under consideration. Items 121, 123, and 124.

On September 20, 1999, the court ruled on Scrufari and Knapp's motion for summary judgment. Item 127. In relevant part, the court denied their motion for summary judgment with respect to the following issues: (1) whether Scrufari's compensation as Plan Manager had been reasonable; (2) whether Knapp violated the Labor–Management Reporting and Disclosure Act ("the LMRDA"), 29 U.S.C. § 401 *et seq.* (1994), by refusing to meet with plaintiff trustees; and (3) whether the defendants had violated the LMRDA by making false and malicious intra-union charges against plaintiffs. *Id.* at 2, 6, 8. By that order of September 1999, however, the court granted defendants' motion regarding plaintiffs' claim that defendants had improperly reduced the number of plaintiff trustees serving on the plans. *Id.* at 8.

By letter dated October 7, 1999, plaintiffs urged the court to reconsider its decision inasmuch as the court had found that there was an issue regarding the reasonableness of Scrufari's compensation. Item 128. The court construed this letter as a motion for reconsideration. At the court's direction, the parties have made further submissions on this issue. Items 129 and 130. In addition to responding to plaintiffs' motion for reargument, defendants again argue for summary judgment regarding certain issues on which the court reserved judgment in its order of September 1999. Item 127. The court heard oral argument on these matters on December 21, 1999, and now renders its decision.

## BACKGROUND

Several sections from the Employee Retirement Income Security Act ("ERISA") figure prominently in plaintiffs' motion to reconsider. First, plaintiffs argue that Scrufari violated ERISA § 404(a) by granting himself unauthorized pay raises. In pertinent part, section 404(a) provides:

(1) [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan . . . .

29 U.S.C. § 1104(a)(1)(A) (1994). Second, plaintiffs argue that Scrufari violated ERISA § 406(b)(1) when he secretly granted himself unauthorized pay raises. Section 406(b)(1) provides: "A fiduciary with respect to a plan shall not—(1) deal with the assets of the plan in his own interest or for his own account." 29 U.S.C. § 1106(b)(1) (1994).

Scrufari maintains that he is entitled to the protections afforded by ERISA § 408. Section 408 creates "safe harbors" for many transactions that would otherwise be prohibited by ERISA. In relevant part, section 408(b)(2) allows plan fiduciaries [1] and parties who have an interest in the plan [2] to receive compensation from the plan for services provided. Section 408(b)(2) provides that:

The prohibitions provided in section 1106 of this title shall not apply to any of the following transactions:

. . .

(2) Contracting or making reasonable arrangements with a party in interest for office space, or legal, accounting, or other services necessary for the establishment or operation of the plan, *if no more than reasonable compensation is paid therefor.*

29 U.S.C. § 1108(b)(2) (1994) (emphasis added). Section 408(c)(2) contains a related provision:

Nothing in section 1106 of this title shall be construed to prohibit any fiduciary from—

. . .

(2) receiving any *reasonable compensation* for services rendered, or for the reimbursement of expenses properly and actually incurred, in the performance of his duties with the plan . . . .

29 U.S.C. § 1108(c)(2) (1994) (emphasis added).

## DISCUSSION

### I. Plaintiffs' Motion for Reargument

### A. The Parties' Positions

In its order of September 20, 1999, the court concluded that plaintiffs could maintain their action against Scrufari on the basis of the allegedly unauthorized compensation he had granted himself as administrator of the plans of Local 280. *See* Item 127, pp. 6–7. In that order, the court stated: "[T]he issue becomes whether Scrufari's compensation was reasonable." *Id.* at 6. Plaintiffs insist that the court erred when it held that there was a triable issue of fact regarding whether Scrufari

---

1. The relevant definition of "fiduciary" under ERISA is as follows: "Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent . . . (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A) (1994).

2. ERISA defines a "party in interest" as follows:

The term "party in interest" means, as to an employee benefit plan—

(A) any fiduciary (including but not limited to, any administrator, officer, trustee, or custodian), counsel, or employee of such employee benefit plan;

(B) a person providing services to such plan . . . .

29 U.S.C. § 1002(14) (1994).

had received "reasonable compensation" as a result of his allegedly unauthorized pay raises. *See* Item 128, p. 1.

Plaintiffs argue that Scrufari's unauthorized and fraudulently concealed pay raises represent a violation of ERISA sections 404(a) and 406(b)(1). Plaintiffs contend that the "reasonable compensation" exemptions found in sections 408(b)(2) and 408(c)(2) do not protect a fiduciary, like Scrufari, who violates section 404(a) or 406(b)(1). Therefore, plaintiffs conclude that there will be no triable issue of fact concerning whether Scrufari received "reasonable compensation" as a result of his allegedly unauthorized and fraudulently concealed pay raises. *See* Item 128.

Scrufari, in turn, argues that the court properly determined that there is an issue as to whether he received reasonable compensation from the plans. First, Scrufari denies that there was anything fraudulent or secret about the disputed pay raises. Scrufari points out that his compensation was discussed at trustee meetings in February 1989, June 1989, August 1991, and February 1992. *See* Item 129, p. 2. More specifically, Scrufari maintains that the trustees were clearly put on notice of his compensation level at a meeting held in August 1991. *See id.* at 5.[3]

Next, Scrufari argues that this court, by its order of September 20, 1999, has already accepted the fact that Scrufari did not breach his fiduciary duty to the plan when he failed to set out the terms of his compensation in the minutes of the trustees' meetings. *See* Item 129, p. 2 and Item 123, pp. 1–4 (discussing defendants alleged violations of sections 404 and 406). The court disagrees and finds that it neither discussed nor ruled on this issue at

that time. *See* Item 127, pp. 3–7. Rather, the court there only ruled on whether ERISA's statute of limitations barred plaintiffs' claim based on Scrufari's compensation. *See id.* at 4–7. In addition, the court concluded that there was a remaining issue as to the reasonableness of Scrufari's compensation. The court did not, however, pass on the issue of whether plaintiffs have adequately shown that Scrufari violated sections 404(a) or 406(b)(1).

Scrufari further insists that plaintiffs' allegations do not amount to a *per se* violation of ERISA § 404. Rather, Scrufari insists that this action involves prohibited transactions under section 406 and the applicable "reasonable compensation" exemptions found in section 408. *See id.* at 3. Furthermore, Scrufari maintains that plaintiffs have provided no case law and, in fact, cannot provide case law to support the proposition that a Plan Administrator commits a *per se* breach of fiduciary duty when he grants himself a pay raise out of the fund's resources. *See id.* at 3. In support of this argument, Scrufari argues that *Dole v. Formica*, 1991 WL 317040 (N.D.Ohio Sep.30, 1991), demonstrates that courts always assess whether compensation was reasonable when there is an issue of the employment relationship between a plan and the plan's administrator. *See* Item 129, p. 3. Yet in *Dole v. Formica*, the issue was whether the *trustees* engaged in a prohibited transaction under section 406 when they authorized certain compensation for the plan administrator. 1991 WL 317040, at *10. In this case, the issue is whether the plan administrator breached his fiduciary duty by granting himself pay raises that the trustees had

---

3. At that time, the trustees discussed a proposed "rabbi trust." Among other things, the rabbi trust provided that "the duties and responsibilities of Santo S. Scrufari are comparable to the officers of [Local 280], and that his wages and other compensations ... are also comparable to those of such officers ...." Item 129, p. 5. However, at that August 1991 meeting, the trustees apparently rejected the proposed rabbi trust. *See* Item 130, pp. 6–7. In any event, this kind of information would not necessarily have given the trustees notice of Scrufari's salary if the trustees were not familiar with the internal wage structure of Local 280. *See id.* at 9. This dispute is a question of fact, and the court will leave its resolution to a fact finder. *See infra.*

not authorized. This represents a critical distinction between *Dole v. Formica* and the present action. *See id.* at *10 & n. 3 ("The Court also notes that this case does not involve allegations that Mr. Formica [the plan administrator] participated in decisions to increase his salary.").

Finally, Scrufari argues that in the lead case relied on by plaintiffs, the court analyzed whether the plan administrator's compensation was reasonable under section 408 even though the plan administrator had granted himself unauthorized pay raises. *See Gilliam v. Edwards*, 492 F.Supp. 1255, 1264 (D.N.J.1980).

## B. Issue of Reasonableness

### 1. *Alleged violations of section 404(a).*

The plain language of section 408(b)(2)'s reasonable compensation exemption reveals that it applies exclusively to the prohibited transactions of section 406, and not to the overarching fiduciary obligations contained in section 404(a). *See* 29 U.S.C. § 1108(b)(2) (1994). Similarly, the plain language of section 408(c)(2) shows that a fiduciary who violates section 404(a) cannot seek the safe harbor of section 408(c)(2)'s reasonable compensation exemption. *See* 29 U.S.C. § 1108(c)(2) (1994). Thus, the court finds that the reasonable compensation exemptions in sections 408(b)(2) and 408(c)(2) do not protect people who violate the fiduciary obligations contained in section 404(a).

Therefore, the court finds that under sections 408(b)(2) and 408(c)(2), there will be no triable issue of fact regarding the reasonableness of Scrufari's compensation if the plaintiffs can establish at trial that Scrufari violated his fiduciary duties under section 404(a).

### 2. *Alleged violations of section 406(b)(1).*

The court is left with the following issue of law: whether Scrufari can apply the reasonable compensation exemptions of section 408(b)(2) or section 408(c)(2) to alleged violations of section 406(b)(1).

### a. *Section 408(b)(2)*

■ The relevant Department of Labor ("DOL") regulations, promulgated pursuant to section 408(b)(2), provide:

[S]ection 408(b)(2) does not contain an exemption from acts described in section 406(b)(1) of the Act (relating to fiduciaries dealing with the assets of the plans in their own interest or for their own account), section 406(b)(2) of the Act . . . or section 406(b)(3) of the Act. . . . Such acts are separate transactions not described in section 408(b)(2).

29 C.F.R. § 2550.408b–2(a) (1999).

In *Gilliam*, the court recognized that " § 1108(b)(2) provides no shelter for § 1106(b)(1) acts—'self-dealing' transactions involving conflicts of interest—relating to fiduciaries dealing with plan assets in their own interest or for their own account." 492 F.Supp. at 1262 (citing 29 C.F.R. § 2550.408b–2(a)); *accord Donovan v. Daugherty*, 550 F.Supp. 390, 404 & n. 3 (S.D.Ala.1982) ("Section 408(b)(2) exempts only violations of section 406(a), not violations of section 406(b).").

In light of the DOL regulations and relevant case law, the court finds that Scrufari cannot find a safe harbor in section 408(b)(2) for his alleged violations of section 406(b)(1).

### b. *Section 408(c)(2)*

However, there is still the issue of whether Scrufari may apply the reasonable compensation exemption of section 408(c)(2) to alleged violations of section 406(b)(1)'s self-dealing prohibitions.

As a threshold matter, the DOL's relevant regulations do not make clear whether section 408(c)(2) is a "distinctly operative" exemption to the prohibited transactions set forth in section 406. *Gilliam*, 492 F.Supp. at 1264. Pursuant to section 408(c)(2), the DOL has promulgated the following regulation:

Section 408(b)(2) of [ERISA] ... refers to the payment of reasonable compensation by a plan to a party in interest for services rendered to the plan. Section 408(c)(2) of the Act and §§ 2550. 408c–2(b)(1) through 2550.408c–2(b)(4) clarify what constitutes reasonable compensation for such services.

29 C.F.R. § 2550–408c–2(a) (1999). The reasoning of *Gilliam* is instructive regarding this ambiguity. There, the court acknowledged that "[r]egulation § 2550.408c–2(a) ... intimates that § 1108(c)(2) and § 1106(b)(1) do not interact: This section refers to § 1108(c)(2) as merely *clarifying* what constitutes the reasonable compensation for the services mentioned in § 1108(b)(2), thus robbing § 1108(c)(2) of independent exemptive power." *Gilliam,* 492 F.Supp. at 1264.

In *Whitfield v. Tomasso,* 682 F.Supp. 1287, 1303–04 (S.D.N.Y.1988), the district court agreed with *Gilliam's* understanding that section 408(c)(2) had no independent significance and functioned only in relation to section 408(b)(2). *See also Donovan,* 550 F.Supp. at 404 (recognizing impliedly that section 408(c)(2) provides only a definition of what "reasonable compensation" is under section 408(b)(2)).

Yet even if the court were to accept that section 408(c)(2) had "independent exemptive power," the court would still find that *none* of section 408's exemptions interact with section 406(b)'s prohibitions. In *Whitfield,* the court summarily concluded that "the exemptive provisions of sections 408(b)(2) and 408(c)(2) apply only to violations of section 406(a), not violations of section 406(b)." 682 F.Supp. at 1304. In a more considered opinion, the court in *Daniels v. National Employee Benefit Services, Inc.,* 858 F.Supp. 684, 693 (N.D.Ohio 1994), addressed a situation where a plan fiduciary had arranged for the sale of securities and insurance to the plan and had then collected commissions on the sales to the plan. The court noted that section 406(a) expressly excepted from its prohibitions the exempted transactions described in section 408. However, the court also noted that section 406(b) did *not* state that section 408's exemptions modified its prohibitions. The court referred to certain DOL regulations in order to resolve this ambiguity:

> A fiduciary may not use the authority, control, or responsibility which makes such a person a fiduciary to cause a plan to pay an additional fee to such fiduciary ... to provide a service. Nor may a fiduciary use such authority, control or responsibility to cause a plan to enter into a transaction involving plan assets whereby such fiduciary ... will receive consideration from a third party in connection with such transaction.

> Thus, § 1108 does not apply to § 1106(b), because fiduciaries are prohibited from receiving consideration—whether or not reasonable—from a third party for transactions involving the plan to which they owe their fiduciary obligations.

*Daniels,* 858 F.Supp. at 693 (quoting 29 C.F.R. § 2550–408b–2(e)). The court finds the *Daniels* court's reasoning instructive.

The court finds that section 408(c)(2)'s reasonable compensation exemption, even if "distinctly operative," will not provide a safe harbor to a plan fiduciary such as Scrufari who has allegedly violated section 406(b)(1). Therefore, the court agrees with plaintiffs that, under sections 408(b)(2) and 408(c)(2), there will be no triable issue of fact regarding the reasonableness of Scrufari's compensation if plaintiffs can establish at trial that Scrufari violated the prohibitions against self-dealing under section 406(b)(1).

In light of the foregoing, the court holds: if plaintiffs can establish at trial that Scrufari violated either section 404(a) or section 406(b)(1) by impermissibly self-dealing with the assets of the plans, then there will be no triable issue of fact under section 408(b)(2) or section 408(c)(2) as to whether

Scrufari's unauthorized compensation was reasonable.

■ Finally, the issue of Scrufari's compensation raises many triable issues of fact. *See e.g.*, Item 109 ¶¶ 22–25; Item 109 Exh. B (Reports dated Oct. 16, 1992 and Nov. 5, 1992); Item 110, ¶¶ 13–14, 18–19, 30; and Item 121, ¶ 4 and Exh. B, p. 11 (containing plaintiffs' allegations of Scrufari's self-dealing through unauthorized pay raises drawn from plans' assets). To the court's understanding, there are several unresolved questions of fact related to this issue, among them: (1) whether Scrufari did in fact grant himself certain pay raises; (2) whether Scrufari was authorized to grant himself such pay raises; (3) whether the union permitted Scrufari to grant himself such pay raises; (4) whether Scrufari violated the union bylaws or rules that control the terms of his salary; (5) whether Scrufari violated either section 404(a) or 406(b)(1); (6) whether Scrufari received reasonable compensation (assuming *arguendo* that there was no violation of sections 404(a) or 406(b)(1)).

## II. The LMRDA Claims

In the context of responding to plaintiffs' motion to reconsider, defendants Scrufari and Knapp have again urged the court to grant them summary judgment on two of plaintiffs' claims: (1) that Knapp and/or Scrufari violated the LMRDA by refusing to meet with union-side plaintiff trustees; and (2) that Knapp and/or Scrufari violated the LMRDA by bringing and prosecuting false and malicious intra-union charges against plaintiffs.

■ "The LMRDA was enacted to encourage democratic self-governance in unions and to curb widespread abuses and corruption among union leadership." *Maddalone v. Local 17, United Bhd. of Carpenters and Joiners of America,* 152 F.3d 178, 183 (2d Cir.1998). Section 101(a)(2) of Title I of the LMRDA, the "Bill of Rights of Members of Labor Organizations," guarantees to union members "the right to meet and assemble freely ... and to express any views, arguments, or opinions" concerning candidates and union policies. 29 U.S.C. § 411(a)(2) (1994). Section 102 of the LMRDA provides that "[a]ny person whose rights secured [by Title I] have been infringed ... may bring a civil action in a [federal] district court ... for such relief ... as may be appropriate." 29 U.S.C. § 412 (1994).

### A. "Refusal to Meet Claim"

#### 1. *Nature of claim.*

In their third amended complaint, plaintiffs have alleged that:

Immediately following Defendant Knapp's election, Defendant Santo S. Scrufari's [sic] attempted to oust at least some of the Plaintiffs from their positions as Trustees of the Funds. In particular, he falsely represented to the employer-side Trustees that a superseded version of the Local 280 By–Law governing appointment of Fund Trustees remained in effect, under which some of the Plaintiffs would not qualify.

*By this and other false representations, Defendant Scrufari apparently managed to convince the employer-side Trustees that there was a legitimate dispute as to whom the proper union-side Trustees were. As a result, they refused to meet with the Plaintiff union-side Trustees.*

Item 87, ¶¶ 21–22. These allegations are identical to allegations made in the second amended complaint. *See* Item 48, ¶¶ 29–30. The court hereinafter refers to this claim as the "refusal to meet claim."

First, the court clarifies one point: plaintiff trustees do not allege that defendants themselves refused to meet with them. Rather, plaintiffs allege that defendants *caused* the employer-side trustees to refuse to meet with the plaintiff union-side trustees. *See* Item 109, ¶¶ 27–32. In short, plaintiffs argue that defendants' improper interpretation of the by-laws caused confusion among the employer-side

trustees as to who the proper union-side trustees were. *See id.* Plaintiffs argue that this, in turn, caused the employer-side trustees' refusal to meet with the plaintiffs. *See id.*

### 2. *"Refusal to meet claim" is contingent on "trustee reduction claim."*

The refusal to meet claim arises from another claim that this court previously dismissed. *See* Item 129, pp. 6–7. This previously dismissed claim was plaintiffs' claim that, in August 1993, the defendants improperly reduced the number of union-side trustees from ten to five (the "trustee reduction claim"). *See* Item 127, pp. 2, 8. For their part, plaintiffs have essentially conceded that the refusal to meet claim arises from their trustee reduction claim. *See* Item 129, pp. 6–7.

Plaintiffs now seek to reargue the dismissal of the trustee reduction claim.[4] In so doing, plaintiffs also seek to establish the refusal to meet claim, which is contingent on the trustee reduction claim.

### 3. *Plaintiffs' reargument on trustee reduction claim.*

In addressing plaintiffs' reargument regarding the trustee reduction claim, the court finds it necessary to modify two of its prior orders. First, the court modifies its order of September 20, 1999, in which the court granted summary judgment to defendants Knapp and Scrufari on the trustee reduction claim. *See* Item 127, p. 8. Previously, defendants had explained the decision to reduce the number of union-side trustees in the following way:

> In 1988, the Union sought to change the way it appointed trustees to the funds. Previously, there were five union

officials who served as trustees of both funds. Sanoian wanted to name five union officials to each of the funds....

Although there appear[ed to be] little support for an argument that the [1988] amendment [to the By–Laws] clearly provided for more than five trustees in total, the Union so interpreted its By-laws commencing in the summer of 1988.

During 1993, in the course of an audit of the Fund by the Department of Labor, the Department of Labor questioned whether the By-laws should be read as allowing for five or ten Union trustees.

In response to the DOL inquiry, Scrufari issued a memo dated July 30, 1993 announcing a trustee meeting for August 6, 1993.... The notice proposed as the agenda the seating of Knapp as a trustee effective July 14 ... and designating, as the remaining Union trustees, LaScala (President), Plaintiff Gormley (Treasurer), Defendant Covatta (Financial Secretary), and Eugene S'dao (Vice President).

Item 104, pp. 13–14. In its order of September 1999, the court credited defendants' explanation and granted summary judgment to defendants on this trustee reduction claim. *See* Item 127, p. 8 (finding defendants' "explanation of the correctness of their [trustee reduction] action ... unrebutted by plaintiff").

■ However, the court now recognizes that plaintiffs have raised triable issues of fact regarding what motivated the decision to reduce the number of union-side trustees. Plaintiffs' theory is that Scrufari illegally reduced the number of union-side trustees in order to retaliate against plain-

---

**4.** On this issue, plaintiffs rely on cases in which courts have held that the LMRDA prohibits the improper removal of union employees and union officials. *See* Item 130, pp. 11–12. Plaintiffs rely most heavily on *Maddalone,* 152 F.3d 178, wherein the court held that wrongful termination of union members or of union officials is actionable under the LMRDA. *Id.* at 183–84. Plaintiffs insist that,

like *Maddalone,* there is clear and convincing evidence in this case that defendants Knapp and Scrufari conspired to suppress dissent within Local 280 by removing certain plaintiffs as trustees. Plaintiffs allege that this was done because certain plaintiffs were investigating Scrufari's unauthorized and excessive compensation.

tiffs' investigation into his allegedly improper pay raises. *See* Item 109, ¶¶ 27–33; Item 130, p. 13. Indeed, the minutes of the Membership Meetings reflect that on August 10, 1993, union member Rocco Sidari "read a resolution to reduce the number of fund trustees from 10 to 5. After much discussion, the resolution was brought to a vote and was defeated." Item 106, Exh. 21. This may prove highly relevant to establishing the trustee reduction claim against Scrufari.

Ultimately, the parties' arguments on the trustee reduction claim represent competing versions of the facts. In the context of a motion for summary judgment, the court will not prefer one side's explanation over the other's.

■ Secondly, the court modifies its order of October 1, 1996, in which the court held that Scrufari, in his capacity as a Plan Manager, could not be held liable under the LMRDA for the August 1993 decision to reduce the number of union-side trustees. *See* Item 84, pp. 14–15. Under cases like *Morrissey v. National Maritime Union of America*, 544 F.2d 19 (2d Cir.1976); and *Keene v. International Union of Operating Engineers, Local 624, AFL–CIO*, 569 F.2d 1375 (5th Cir.1978), Scrufari could face individual liability under the LMRDA for his actions as Plan Manager. In *Morrissey*, the court of appeals held that LMRDA liability "extends to ... individual defendants, at least if it is shown that they were acting under color of union authority." 544 F.2d at 24. In *Keene*, the Fifth Circuit endorsed *Morrissey* and found that the LMRDA:

> [E]xtends the jurisdiction of the district court to suits against individual union officials who, acting under color of their union authority, violate the [LMRDA] rights of union members. Both reason and precedent support the ... view that, where the evidence shows that the defendants were agents of the union acting

abusively within the scope of their union duties, damages could be assessed against them individually.

569 F.2d at 1381 (citing, *inter alia, Morrissey*, 544 F.2d at 24) (footnote omitted). As it stands, the record could support the conclusion that Scrufari was a union official who, under color of his union authority, violated plaintiffs' LMRDA rights by reducing the number of union-side trustees.[5] In light of the foregoing, the court holds that Scrufari could face liability under the LMRDA for plaintiffs' trustee reduction claim.

The court must also determine, then, whether Scrufari could face liability under the LMRDA for plaintiffs' refusal to meet claim. Again, the court notes that the refusal to meet claim arises from the trustee reduction claim. *See supra.* Here, plaintiffs may argue that in reducing the number of union-side trustees, Scrufari took actions that were "proximately related" to the refusal to meet claim. *Maxwell v. UAW, Local No. 1306*, 489 F.Supp. 745, 751 (C.D.Ill.1980) (holding that certain defendants were "all proper defendants, in that their actions were under color of union authority and were *proximately related to the alleged violations of plaintiffs' rights*" (emphasis added)). As such, the court holds that Scrufari could also face liability under the LMRDA for plaintiffs' refusal to meet claim.

■ With respect to Knapp, the record indicates that it was Scrufari's decision to reduce the number of trustees from ten to five. Moreover, the record contains insufficient evidence to support the inference that Knapp was involved in the decision to reduce the number of trustees. *See* Item 104, p. 14; Item 106, Exh. 20 (memorandum from Scrufari to all trustees of Local 280's plans); Item 109, ¶ 31 ("Gordon Knapp, our new General Agent, was there as a trustee. I do not recall Knapp saying

---

5. Again, it is a question of fact as to whether Scrufari was responding to pressure from the DOL or whether he was seeking to end plain-

tiffs' investigation when he reduced the number of union-side trustees from ten to five. *See supra.*

much of anything. He did not have to, since Scrufari did all the talking, insisting that, by law, there could be only five Union–Side Trustees.") (Affidavit of Plaintiff Janese). Therefore, the court holds that Knapp is entitled to summary judgment on plaintiffs' trustee reduction claim. As for the refusal to meet claim, that claim is necessarily contingent on Knapp's involvement in the trustee reduction decision. *See supra.* It follows logically, then, that Knapp is also entitled to summary judgment on plaintiffs' refusal to meet claim.

## B. "Malicious Charges Claim"

In their third amended complaint, plaintiffs have alleged:

Commencing about the time of Defendant Gordon J. Knapp's election in July 1993, Defendants Santo S. Scrufari, Knapp and David Fay, and most of the other Local 280 Defendants, embarked on a scheme to entrap Plaintiffs through the mechanism of baseless and malicious intra-union charges claiming that actions taken by the Plaintiffs without prior membership approval, as either the Executive Board or PAC, constituted a "misappropriation" of Local 280's funds.

Item 87, ¶ 23. This allegation in plaintiffs' third amended complaint mirrors an allegation made in plaintiffs' second amended complaint. *See* Item 48, ¶ 38. The court hereinafter refers to this allegation as plaintiffs' "malicious charges claim."

The court has previously dismissed the malicious charges claim as it pertained to Scrufari. By an order dated October 1, 1996, the court found that:

Plaintiffs state no valid claims against defendant Scrufari pursuant to LMRDA §§ 101 and 102 for his role as the Pension and Welfare Funds' Manager. Nowhere do plaintiffs allege that the Plan Manager is a union officer. Consequently, the allegations in paragraphs 29–45 [of the second amended complaint] are dismissed.

Item 84, pp. 14–15; Item 48, ¶ 38 (Second Amended Complaint) (containing allega-

tions of Scrufari's involvement in the allegedly malicious charges). For the reasons set forth *supra,* the court modifies its order of October 1, 1996, and finds that Scrufari may face liability under the LMRDA for actions taken as Plan Manager.

Defendants maintain that the record establishes that it was Sal Pelliccio, the International Union's Executive Board Member, not Knapp or Scrufari, who brought the allegedly malicious charges against plaintiffs. *See* Item 109, Exh. C. Plaintiffs concede that Pelliccio instituted the allegedly malicious charges, *see* Item 109, ¶ 41, and Item 110, ¶ 32, but also aver that Scrufari and Knapp's role in these charges is belied by the fact that they prosecuted the charges before the union's Trial Committee. Plaintiffs state that Knapp prosecuted the charges until the Trial Committee dismissed him from the hearing for physically attacking plaintiff Janese. *See* Item 109, ¶ 41. At that point, plaintiffs state that Scrufari took over the prosecution. *See id.*

Moreover, plaintiffs urge the court to consider "the big picture" when assessing whether Scrufari and Knapp violated the LMRDA by attempting to chill dissident union activity. For example, plaintiffs also allege that Scrufari and Knapp illegally retaliated against them by refusing to refer them work. *See* Item 130, pp. 14–15.

On the basis of the record now before it, the court cannot say that this combination of evidence establishes, as a matter of law, that Scrufari and Knapp violated section 101(a)(2) of the LMRDA. As such, the court reserves judgment on this issue and leaves the inquiry to a fact-finding procedure.

Finally, the court realizes that plaintiffs will attempt to establish at trial that Scrufari and Knapp violated their rights under the LMRDA. In doing so, plaintiffs shall proceed in accordance with this opinion and all prior orders issued in this action. For example, plaintiffs shall not pursue

issues that the court has now foreclosed by partially granting defendant Knapp's motion for summary judgment.

## CONCLUSION

For the reasons stated herein, the court: (1) grants in part plaintiffs' motion to reconsider (Item 128) and finds that if plaintiffs establish at trial that defendant Scrufari violated ERISA §§ 404(a) or 406(b)(1), then there will be no triable issue regarding reasonable compensation under ERISA §§ 408(b)(2) or 408(c)(2); (2) grants defendant Knapp's motion for summary judgment (Item 103) with respect to whether he violated section 101 of the LMRDA either by reducing the number of union-side trustees who served on Local 280's plans or by causing a refusal to meet with the plaintiffs who served as union-side trustees; (3) denies defendant Scrufari's motion for summary judgment (Item 103) with respect to whether he violated section 101 of the LMRDA either by reducing the number of union-side trustees or by causing a refusal to meet with the plaintiffs who served as union-side trustees; and (4) denies defendants Scrufari and Knapp's motions for summary judgment (Item 103) with respect to the issue of whether they violated section 101 of the LMRDA by prosecuting malicious intra-union charges against plaintiffs and by refusing to refer work to plaintiffs. A telephone conference shall be held with counsel on Wednesday, April 26, 2000, at 10:30 a.m.

So ordered.