Fredrick K. KOCH, Plaintiff–Appellant,

v.

TOWN OF BRATTLEBORO, VER-
MONT, Sherwood D. Lake, Jr., and
John Doe, Unidentified Brattleboro
Police Officer, Defendant–Appellees.

No. 875, Docket 01–7504.

United States Court of Appeals,
Second Circuit.

Argued Feb. 28, 2002.

Decided March 29, 2002.

David A. Gibson, Brattleboro, VT, for Plaintiff–Appellant.

Kevin J. Coyle, Burlington, VT; Nancy Goss Sheahan, McNeil, Leddy & Sheahan,

Burlington, VT, of counsel, for Defendants–Appellees.

Before KEARSE, JACOBS, and KEITH,* Circuit Judges.

KEITH, Circuit Judge.

Plaintiff Fredrick Koch ("Koch") appeals the district court's grant of summary judgment for Defendants Town of Brattleboro, Vermont, Deputy Sheriff Sherwood D. Lake ("Lake"), and Police Officer John Doe on Koch's civil rights claim brought under 42 U.S.C. § 1983. Koch alleged that the Defendants violated his Fourth Amendment rights when Lake and another officer (later identified as Marshall Holbrook) placed Koch in custody after entering his home without a search warrant, arrest warrant, or other justification. The district court held that because the Defendants did not violate Koch's Fourth Amendment rights, Koch had no cause of action. Although we agree that the police's initial entry into Koch's house was proper, as was their later entry into a second floor room, we find it unnecessary to decide whether their presence in the house between these two events, over Koch's objection, violated Koch's Fourth Amendment rights. Because the law on that question is not clearly established, the Defendants are entitled to qualified immunity. Therefore, we AFFIRM the district court's grant of summary judgment in favor of the Defendants.

## I. Factual Background

The district court succinctly summarized many of the facts:

Fred Koch was 70 years old at the time of his arrest. He has suffered from bipolar disorder for many years and is required under conditions of state probation to take lithium on a daily basis. His mental illness has caused him to behave inappropriately in social situations on many occasions and his behavior has often required police intervention. At the time of the arrest at issue here, Lake had known Koch for about 15 years and was aware of his mental illness. He considered Koch to pose a danger under certain circumstances.

On March 9, 1997, the Brattleboro Police Department (Police) received a complaint that Koch had, after attempting to run the complainants' car off the road, pinned their parked car so as to impede their ability to exit the car, and then threatened them physically and orally. Later that day, the Police received a second complaint from another citizen that Koch had blocked her car with his vehicle and then attempted to keep her from leaving a parking lot. At some point, Lake reported these complaints to the state's attorney, James Maxwell, who advised Lake to charge Koch with two felony counts of Unlawful Restraint in the second degree.

On March 17, 1997, Lake and Holbrook went to Koch's residence in separate squad cars "to either give [him] a citation or bring [him] to the station for processing in connection with the events of March 9th." They had not requested or received a search warrant or arrest warrant.

Dist. Ct. Op. at 2,3.

At Koch's house, Doris Reed, a friend of Koch's, answered the door. Reed invited the officers in and told them that Koch was upstairs. Lake knew that Reed and Koch were friends. He thought that they might be companions, knew she was often

---

* The Honorable Damon J. Keith of the United States Court of Appeals for the Sixth Circuit, sitting by designation.

at Koch's home, and frequently saw them in each other's company. Lake also knew that Reed lived at a separate residence.

After the officers entered the house, Koch, standing at the top of the stairs, told them to leave. The officers did not leave, but followed Reed up the stairs towards Koch.[1] Koch remained angry and orally abusive at the officers' continued presence. Lake told Koch that he wanted to speak to him. While they continued up the stairs, Koch went into a room on the second floor.

Lake and Reed knocked on the door to that room. Koch opened the door, Reed vanished inside the room, and Koch locked the door. At this point, according to his deposition testimony, Lake was concerned for Reed's safety. He banged on the door, but Koch refused to open it. Using a fire extinguisher pin hung on the wall, Lake picked the lock and opened the door. After entering the room, Lake realized that Koch was not a threat to Reed, Holbrook, or himself; however, Koch was agitated. Lake believed that Koch had begun to lose control. The officers then handcuffed Koch and transported him to the police department. Koch did not resist. He was released from custody within an hour or two and given a citation to appear in court the next day. Koch was arraigned on March 19, 1997, and his charges were amended to two counts of disorderly conduct.

Koch then filed a complaint in the United States District Court for the District of Vermont, alleging that the Defendants had violated his civil rights by violating his Fourth Amendment rights. The Defendants moved for summary judgment, and the district court granted it in whole. Koch then filed the instant appeal.

## II. Standard of Review

This Panel reviews a grant of summary judgment de novo. *Irby v. New York City Transit Authority*, 262 F.3d 412, 413 (2d Cir.2001). Summary judgment is appropriate if "there is no genuine issue as to any material fact, and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard places the initial burden on the moving party to identify "those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once a moving party has demonstrated the absence of any genuine issue of material fact, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c). The court must read all facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. Discussion

### A. Qualified Immunity and Municipal Liability

█ When determining whether a public official is entitled to qualified immunity, we ordinarily begin with a two-step test. *See County of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). First, we determine whether a constitutional right was violated. *See Dela Cruz v. Kauai County*, 279 F.3d 1064, 1068 (9th Cir.2002) (citing *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001)). Then, we determine whether that right was "clearly established." *Id.* at 1069. " 'The contours of

---

**1.** During his deposition, Lake admitted to ignoring Koch's request to leave. (J.A. 131).

the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* (citing *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). "If the controlling law is not clearly established, an official cannot be liable, because 'a reasonable person would not be expected to know how to structure his conduct to avoid liability.'" *Id.* (citing *Mendoza v. Block,* 27 F.3d 1357, 1361 (9th Cir.1994)).

Although we normally apply this two-step test, where we are convinced that the purported constitutional right violated is not "clearly established," we retain the discretion to refrain from determining whether, under the first step of the test, a constitutional right was violated at all. *See Horne v. Coughlin III,* 191 F.3d 244 (2d Cir.1999). *cert. denied* 528 U.S. 1052, 120 S.Ct. 594, 145 L.Ed.2d 493 (1999). In such an instance, we may rely exclusively on qualified immunity to decide a case. *Id.* This procedure avoids the undesirable practice of unnecessarily adjudicating constitutional matters. *See id.* at 246. The principle concern directing us to decide the constitutional issue, however, is the "likelihood that the question will escape federal court review over a lengthy period" because federal courts will repeatedly rely on qualified immunity to decide cases. *Id.* at 249. Were this to happen, the right would never be "clearly established" because courts would habitually avoid the question. *Id.*

■ Here, there is little chance that any unsettled constitutional issues raised will escape federal review for long. The facts of this case are not ones that only occur in § 1983 cases. More often, they will be litigated during a motion to sup-

press in a criminal trial. At such a time, the court will not be able to avoid deciding the constitutional questions raised in this case. Therefore, where appropriate, we refrain from determining whether Koch's Fourth Amendment rights were violated. On such issues, summary judgment was appropriate for the Defendant-officers because Koch cannot point to the existence of a "clearly established" right. Similarly, summary judgment was appropriate for the Defendant-municipality on Koch's claim that it failed to train its employees properly, because its employees did not violate, or are not likely to violate, a "clearly established federal constitutional right"—a prerequisite for municipal liability under a failure to train theory. *Townes v. City of New York,* 176 F.3d 138, 143 (2d Cir.1999), *cert. denied,* 528 U.S. 964, 120 S.Ct. 398, 145 L.Ed.2d 311 (1999). On other issues, where a violation of a clearly established constitutional right is alleged, Koch's claims fail because the Defendants did not violate his Fourth Amendment rights.

### B. Fourth Amendment Claims

■ The Fourth Amendment states that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. Amend. IV. The Fourth Amendment's "central requirement is one of reasonableness." *Illinois v. McArthur,* 531 U.S. 326, 330, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001).

■ A warrantless search is *per se* unreasonable under the Fourth Amendment, absent certain exceptions to the warrant requirement. *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).[2]

**2.** Although *Katz* and other cases in this section may deal solely with the consent to

search, they reveal fundamental principles that seem applicable to the scope of a third

■ The first exception to the warrant requirement applicable to this case is entry pursuant to consent. A search conducted pursuant to consent by an authorized third party does not require probable cause or a warrant. *United States v. Matlock*, 415 U.S. 164, 171 n. 7, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). The consenting third party need not have *actual* common authority over a residence, therefore giving them actual authority to consent to a search; "[D]etermination of consent to enter must be judged against an objective standard: would the facts available to the officer at the moment ... 'warrant a man of reasonable caution in the belief that the consenting party had authority over the premises?'" *Illinois v. Rodriguez*, 497 U.S. 177, 188, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990) (quoting *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

■ In *United States v. Davis*, 967 F.2d 84, 87 (2d Cir.1992), *cert. denied sub nom., Content v. United States*, 506 U.S. 928, 113 S.Ct. 356, 121 L.Ed.2d 270 (1992), we held that "a third party consent to a search will validate the search if two prongs are present: first, the third party had access to the area searched, and, second, either: (a) common authority over the area; or (b) a substantial interest in the area; or (c) permission to gain access." *Id.* Common

authority rests "on mutual use of the property by persons generally having joint access or control for most purposes...." *Matlock*, 415 U.S. at 171 n. 7, 94 S.Ct. 988.

### 1. *Officers' Initial Entry*

■ It is clear that Lake and Holbrook's belief that Reed had the authority to consent to their entry was reasonable. Lake had seen Reed and Koch together often and believed them to be very close. Because the officer's initial entry into the house did not violate Koch's Fourth Amendment rights, he cannot prevail on his § 1983 claim based on their initial entry.

Although the officers' initial entry into the house was proper, it is important to note the basis of Reed's ability to consent to the search. Lake could have only reasonably believed that Reed had "permission to gain access" and not "common authority over the area." Reed had access to the house and Lake knew that Reed and Koch frequently spent time together. However, Lake also knew that the two were not married, maintained separate residences[3] and at the most, occasionally spent the night at each other's residence. These facts suggest that Lake could not have reasonably believed that Reed had "mutual use" or "joint access or control" of the property.[4]

party's authority to grant consent to enter and to the reasonableness of an officer's view of that authority.

3. While it is possible that Reed could have had more than one residence, Lake stated that he thought Reed lived in her own apartment.

4. The facts before us are similar to those in *Rodriguez*, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148, where the third party who consented to the search sometimes spent the night, never invited friends, never went to the home by herself when the occupant was not there, did not have her name on the lease,

and did not contribute to the rent. *Id.* at 181, 110 S.Ct. 2793. In *Rodriguez*, the Supreme Court stated that "the Appellate Court's determination of no common authority over the apartment was obviously correct." *Id.* at 182, 110 S.Ct. 2793. However, the Court found that the police did have the authority to rely on the third party's consent because they reasonably believed that she did have common authority. *Id.* at 186, 110 S.Ct. 2793. Here, however, the fact that Lake knew that Reed lived at a separate residence, which was absent in *Rodriguez*, weighs heavily against finding that the police could have reasonably believed that Reed had common authority.

### 2. Officers' Continued Presence Over Koch's Objection

█ Although Koch's Fourth Amendment rights were not violated by the police officers' initial entry into the house, Koch also argues that their continued presence over his objections violated his Fourth Amendment rights. It is unsettled whether the Fourth Amendment allows the police to remain in a home over the objections of the primary occupant when they enter pursuant to the reasonable belief that a third party, whom the police know has lesser authority over the premises than the primary occupant, has consented to their entry. Therefore, Koch cannot point to a "clearly established right" that was violated. As such, we find it unnecessary to decide, as the district court did, whether the officers violated Koch's Fourth Amendment rights. Instead, we explain both arguments only to show the ambiguity in the law and affirm the grant of summary judgment because the officers were entitled to qualified immunity.

Some lower courts have addressed whether the Fourth Amendment requires the police to leave a residence when the primary occupant objects to a third party's consent to their search. All begin with the Supreme Court's decision in *Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242.

In *Matlock*, the defendant was arrested based on evidence that the police found at his residence without a warrant or the defendant's consent. When the police first approached the residence, they saw the defendant outside in the front yard. Instead of asking the defendant himself for consent to search his residence, the police obtained the consent of a third party. In upholding the search of the residence and seizure of evidence found inside, the Su-preme Court stated that "permission to search [may be] obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspect-ed." *Id.* at 171, 94 S.Ct. 988. The *Matlock* Court reasoned that in such a situa-tion, "it is reasonable to recognize that . . . others have assumed the risk that one of their number might permit the common area to be searched." *Id.* at n. 7, 94 S.Ct. 988.

The fact that the defendant in *Matlock* was present, but not consulted, at the time of the search has played an important role in subsequent lower court decisions where the defendant has specifically objected to a third party's consent. The leading Court of Appeals case on point, *United States v. Sumlin*, 567 F.2d 684 (6th Cir.1977), *cert. denied* 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1978), held that the facts of *Matlock* showed that a defendant's objec-tion to a search is irrelevant if an autho-rized third party consents to the search.[5] Citing the fact that the defendant in *Mat-lock* was present, although not consulted for his consent, the court said:

> There is no reasonable expectation of privacy to be protected under such cir-cumstances. We cannot see how the additional fact of Appellant's initial re-fusal to consent in any way lessened the risk assumed that his co-occupant would consent. This additional fact does not increase a reasonable expectation of pri-vacy.

*Id.* at 688. It is worth noting however, that although the *Sumlin* court considered the Appellant to have objected to the search, the court also found that after his initial objection, the defendant did not

---

**5.** In an unsigned opinion, the D.C. Circuit followed *Sumlin*. *See United States v. Hendrix*, 595 F.2d 883 (1979) (per curiam). Addi-tionally, the Southern District of New York has followed *Sumlin*. *See Charles v. Odum*, 664 F.Supp. 747 (S.D.N.Y.1987).

urge the third party to withhold consent, and even told her that her consent need not be withheld. *Id.* at 685. Additionally, the third party in *Sumlin* was a co-occupant of the residence, having her name on the lease. Therefore, the third-party's authority probably inhered independent of the defendant. Here, as discussed earlier, Reed's authority was probably not independent of Koch's, but derived from Koch's "permission to gain access."

Koch advances the counter-argument that because a primary occupant has the greater power to create and destroy a third party's authority to consent to a search of his personal and exclusive premises, the primary occupant retains the lesser power to object to a third party's consent when present.[6] Such an objection would thus revoke or limit the third party's existing authority to consent; when he is absent or silent,[7] however, he would assume the risk that the third party may act adversely to his interests.

While not deciding which of these or other positions is mandated by the Fourth Amendment, we note that existing law is unclear on this issue. Therefore, Koch cannot point to a "clearly established right" that Lake and Holbrook violated in order to break the officers' qualified immunity and survive the summary judgment motion.

### 3. *Officers' Forced Entry Into Second Floor Room*

█ Finally, Koch argues that the officers violated his Fourth Amendment rights by forcing open the door to his second-floor room.

Another specifically established exception to the warrant requirement is entry pursuant to "exigent circumstances." *Payton v. New York*, 445 U.S. 573, 598, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). "[P]olice may enter a dwelling without a warrant to render emergency aid and assistance to a person whom they reasonably believe to be in distress and in need of that assistance." *Tierney v. Davidson*, 133 F.3d 189, 196 (2d Cir.1998) (citing *Root v. Gauper*, 438 F.2d 361, 364 (8th Cir.1971)). "Probable cause for a forced entry in response to exigent circumstances requires finding a probability that a person is in 'danger.' " *Kerman v. City of New York*, 261 F.3d 229, 236 (2d Cir.2001).

Given Lake's knowledge of Koch's propensity for erratic behavior and the abrupt manner in which Reed vanished inside his room, we agree with the district court that the police's belief that Reed was in danger was reasonable. Therefore, summary judgment was appropriate because the officers reasonably believed that exigent circumstances justified their entry.

### IV. Conclusion

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment.

---

**6.** One state court case supports this result, although by a different rationale. *See Silva v. State*, 344 So.2d 559 (Fla.1977). However, because *Silva* was decided before *Matlock* and relied heavily on cases severely weakened by *Matlock*, its rationale is of questionable value today.

**7.** This was the case in *Matlock*.