Ernest TUSINO, Plaintiff–Appellant,

v.

INTERNATIONAL BROTHERHOOD OF TEAMSTERS and Ronald Carey, Individually and in his Capacity as General President of the International Brotherhood of Teamsters, Defendants–Appellees.

Docket No. 01–7734.

United States Court of Appeals, Second Circuit.

June 10, 2002.

Charles J. Brucato, Jr., Consigli & Brucato, P.C., Milford, MA, for Plaintiff–Appellant.

Eric R. Greene, Spivak, Lipton, Watanabe, Spivak & Moss LLP; Roy N. Watanabe, Denis P. Duffey, Jr., on the brief, New York, NY, for Defendants–Appellees.

Present STRAUB and SOTOMAYOR, Circuit Judges, GOLDBERG, Judge.*

## SUMMARY ORDER

AFTER ARGUMENT AND UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is **AFFIRMED IN PART AND VACATED IN PART AND REMANDED FOR FURTHER PROCEEDINGS.**

Plaintiff–Appellant Ernest Tusino appeals from an order of the United States District Court for the Southern District of New York (Loretta A. Preska, Judge) granting summary judgment in favor of Defendants–Appellees International Brotherhood of Teamsters ("IBT") and Ronald Carey.

The following facts are undisputed. From 1988 until March 14, 1996, Tusino held the position of Secretary–Treasurer of IBT Local Union 170 ("Local 170"). On July 26, 1994, after conducting a hearing that included testimony from Tusino, an administrative law judge of the National Labor Relations Board ("NLRB") ruled that Local 170, under Tusino's direction and control, had operated an illegal hiring hall and had discriminated against a union member in violation of sections 8(b)(1)(A) and 8(b)(2) of the National Labor Relations Act, 29 U.S.C. §§ 158(b)(1)(A),

158(b)(2). The NLRB administrative ruling was never appealed.

As a result of the NLRB ruling, the Ethical Practices Committee ("EPC") of the IBT exercised jurisdiction over Tusino's alleged wrongdoing pursuant to its authority under Article XIX, Section 11(a) of the IBT constitution, which provides:

> Whenever charges involving a member or members, officer or officers, Local Union, Joint Council or other subordinate body create, involve or relate to a situation imminently dangerous to the welfare of a Local Union, Joint Council, other subordinate body or the International Union, the General President is empowered, at his discretion, in all cases ... to assume original jurisdiction in such matter, regardless of the fact that charges have been filed with a subordinate body and are pending.

Tusino was charged by the EPC with having "brought reproach" upon the IBT by violating various provisions of the IBT constitution and bylaws. The EPC conducted a hearing and found, in a written report dated January 4, 1996, that "the preponderance of the reliable evidence does not establish that Tusino ... violated [his] obligations under the Constitution and Bylaws [of the IBT] in the referral of members from the Local 170 hall or that Tusino intended to or in fact discriminated against [the] Local 170 member [at issue]." Tusino Aff. in Opp'n to Defs.' Summ. J. Mot. ¶ 29. Accordingly, the EPC recommended that the disciplinary charges against Tusino be dismissed.

Defendant–Appellant Carey, who was at all relevant times the general president of IBT, received the EPC's findings and recommendation for review. In a written decision dated March 14, 1996, Carey de-

---

* The Honorable Richard W. Goldberg, Judge of the United States Court of International Trade, sitting by designation.

clined to accept the EPC report and instead concluded that the charges against Tusino had been satisfactorily proven and that such conduct violated various sections of the IBT constitution and bylaws. As punishment, Carey suspended for three months Tusino's IBT membership and suspended for two years Tusino's employment or holding of office with the IBT.

Tusino filed the instant action on March 26, 1996 in the United States District Court for the District of Massachusetts. Two days later, Tusino moved to preliminarily enjoin the defendants from implementing the suspension. The case was transferred to the Southern District of New York on April 10, 1996, where it was assigned to United States District Judge David N. Edelstein. On June 6, 1996, Judge Edelstein denied the motion for preliminary injunction. *See Tusino v. International Brotherhood of Teamsters*, 928 F.Supp. 319 (S.D.N.Y.1996).

The case was subsequently transferred to United States District Judge Loretta A. Preska after the death of Judge Edelstein. On January 31, 2001, the defendants moved for summary judgment. Because Tusino had withdrawn various claims, only two counts in the complaint were at issue: (1) Count One alleging that Tusino's suspension violated the IBT constitution, thereby constituting a breach of contract pursuant to section 301 of the Labor–Management Relations Act, 29 U.S.C. § 185; and (2) Count Three alleging that Tusino's suspension was in retaliation for Tusino's political criticism of Carey and thus violated section 101 of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 411. In an oral ruling on April 13, 2001, the District Court granted the defendants' motion for summary judgment on both counts. This timely appeal followed.

We review a grant of summary judgment *de novo*. *Koch v. Town of Brattleboro, Vermont*, 287 F.3d 162, 165 (2d Cir. 2002). Summary judgment is appropriate only if "there is no genuine issue as to any material fact, and . . . the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). All facts must be read in the light most favorable to the non-moving party. *Koch*, 287 F.3d at 165.

## THE BREACH OF CONTRACT CLAIM

■ In respect of summary judgment on the breach of contract claim, the District Court ruled that defendants-appellants' suspension of Tusino did not involve a patently unreasonable interpretation of the IBT constitution. We agree. "A union's interpretation of its own constitution is entitled to great deference in order to avoid interference with internal union affairs . . . and . . . will be upheld unless patently unreasonable." *Sim v. New York Mailers' Union Number 6*, 166 F.3d 465, 470 (2d Cir.1999) (citation and internal quotation marks omitted). Far from being patently unreasonable interpretations of the IBT constitution, the process by which defendants-appellants suspended Tusino accorded fully with the procedures set forth therein.

Tusino first contends that the disciplinary charges against him should have been heard by his local Executive Board prior to any assertion of jurisdiction by the EPC. To the contrary, Article XIX, Section 11(a) of the IBT constitution provides that when the general president exercises his emergency powers under section 11(a), all pending charges before any subordinate body of the IBT "shall cease."

Tusino also argues that Carey, as general president, should have provided notice and conducted the disciplinary hearing in

the first instance rather than the EPC. But Article XIX, Section 11(b) of the IBT constitution allows the general president to "deputize a member or members of the International Union to act as his representative or representatives" when he exercises his emergency powers under Article XIX, Section 11(a). It was the EPC that was "deputized" for purposes of Article XIX, Section 11(b). *See* Rules and Procedures of the EPC 1(a) ("The Ethical Practices Committee (EPC) of the International Brotherhood of Teamsters (IBT) shall be established and operate pursuant to the authority granted to the General President by Article XIX, Sec. 11 of the IBT Constitution.").[1]

Lastly, Tusino challenges Carey's authority to reverse the findings and recommendation of the EPC and to impose the sanction of suspension. Again, the very terms of the IBT constitution undermine Tusino's position. Article XIX, Section 11(b) of the IBT constitution specifically states that "when a trial shall be conducted by a representative or representatives of the General President, such representative or representatives shall make his or their recommendations to the General President, orally or in writing, and the decision in the case shall be made by the General President himself." Rule 8(a) of the Rules and Procedures of the EPC further provides that "[f]ollowing review of the [EPC] panel's Final Report and the record of the hearing, if any, the General President shall, within 60 days, impose such sanctions as seem fair and just, or render a decision declining to impose sanctions. The General President shall give due consideration to the recommendations

of the panel in making this determination, but shall not be bound thereby."

We readily conclude that the procedure by which Tusino was suspended from the IBT comported with a reasonable interpretation of the IBT constitution. Accordingly, that portion of the District Court's order granting summary judgment in favor of the defendants-appellants as to Count One of the complaint is affirmed.

## THE RETALIATION CLAIM

In respect of summary judgment on the retaliation claim, the District Court found nothing in the record "from which a trier of fact could conclude that then General President Carey's imposition of discipline on Mr. Tusino was in retaliation against him for support of other candidates or for any other purpose." Tr. Apr. 13, 2001 Hr'g. We disagree.

Section 101(a)(2) of the LMRDA, 29 U.S.C. § 411(a)(2), "protects union members from direct interference with union membership rights in retaliation for their expression of opinions concerning union activities." *Maddalone v. Local 17, United Brotherhood of Carpenters & Joiners of America*, 152 F.3d 178, 183 (2d Cir.1998). Tusino has advanced at least three pieces of evidence supporting the inference that Carey and the IBT suspended him in retaliation for his political activities. First, Tusino has provided an affidavit wherein he avers that he was a vocal supporter of Carey's rival for IBT general president and thus a political opponent of Carey. Tusino Aff. in Opp'n to Defs.' Summ. J. Mot. ¶¶ 7–8. Second, there is the report of the United States House of Representatives in which a general finding

---

1. To the extent that Tusino raises on appeal the claim that the Rules and Procedures of the EPC were never properly adopted, that claim was waived below. Tr. Apr. 13, 2001 Hr'g at 7. Moreover, Tusino relied on the validity of those very rules in his complaint, (Comp.¶¶ 15–21) and in his motion for a preliminary injunction (*Tusino*, 928 F.Supp. at 327–28, 330, 332).

 

was made that Carey used the EPC "as a means of targeting political opponents." HOUSE COMM. ON EDUC. AND THE WORKFORCE, SUBCOMM. ON OVERSIGHT AND INVESTIGATIONS, 106TH CONG., REPORT ON THE FINANCIAL, OPERATING AND POLITICAL AFFAIRS OF THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS (Feb. 24 1999) at 80 [hereinafter HOUSE REPORT]. The defendants have not challenged, either before the District Court below or in this appeal, the admissibility of the House Report and the general finding therein. Third, there is the undisputed fact that Carey punished Tusino despite the EPC's findings and recommendation otherwise.

Tusino can thus make a showing that he was Carey's political opponent, that Carey engaged in a pattern of punishing such opponents through the EPC, that Tusino was punished in a manner that conformed to that pattern, and that Carey's advisors had counseled him that Carey's actions had not violated the IBT constitution or bylaws. Reading all these facts in the light most favorable to Tusino, as we must, it would not be unreasonable for a fact finder to infer that Tusino was the victim of retaliation by the defendants-appellants.[2]

*Cotter v. Owens*, 753 F.2d 223 (2d Cir. 1985), supports the conclusion that Tusino's retaliation claim should survive summary judgment. There, Michael Cotter sued his union under section 101(a)(2) of the LMRDA on the grounds that he was fired from his position in the union because of his political views. In order to prove before the district court "that his removal was part of an over-all scheme to suppress dissent" rather than an isolated incident, Cotter "detail[ed] the history of past and

present litigation between his dissident group, or its precursors, and the union leadership." *Id.* at 229. We reversed the district court's entry of summary judgment against Cotter and remanded "for determination of whether Cotter's removal was part of a broader anti-democratic scheme" by the union. *Id.* at 230.

As in *Cotter*, we believe that Tusino has supplied sufficient evidence of retaliation, at least at this juncture of the case, to prevent judgment as a matter of law against him. Of course, Carey and the IBT have asserted that there in fact existed a legitimate basis for Tusino's suspension—namely, the NLRB administrative finding that Tusino operated Local 170 as an illegal hiring hall and discriminated against a union member. This particular argument, however, only confirms our conclusion that there is a genuine dispute of material fact and that the matter should be allowed to proceed to trial. That portion of the District Court's order granting summary judgment in favor of the defendants-appellants as to Count Three of the complaint is therefore vacated and the case is remanded for further proceedings.

## CONCLUSION

Based on the foregoing reasons, we **AFFIRM IN PART AND VACATE IN PART AND REMAND FOR FURTHER PROCEEDINGS** the judgment of the District Court.

---

**2.** We note that Tusino has represented that, at trial, he would call as witnesses those former members of the EPC whose congressional testimony formed the basis of the House Report's general finding that Carey used the EPC "as a means of targeting political opponents." Appellant's Br. at 27. That testimony included specific discussion of the EPC's investigation into Tusino and Carey's response to the EPC's recommendation that no punishment was warranted. *See* HOUSE REPORT at 88–93.