Ellis Luciean **MARSHALL**, Plaintiff,

v.

**UNITED STATES of America,**
**Defendant.**

**No. 99 Civ. 3877.**

United States District Court,
S.D. New York.

Jan. 30, 2003.

---

Ellis Luciean Marshall, Leesport, PA, pro se.

Danielle A. Gentlin, U.S. Atty., New York City, for U.S.

### DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Ellis Marshall ("Marshall") brought this action against the United States of America (the "Government") under the Federal Tort Claims Act, 28 U.S.C. §§ 1346 *et seq.* (the "FTCA" or the "Act") in connection with certain injuries he suffered following an assault by another inmate at the federal Metropolitan Correctional Center (the "MCC") in New York.

Before the Court is the Government's motion for summary judgment. For the reasons discussed below, the motion is granted.

## I. FACTS

According to the claim for injury Marshall filed with the MCC, the incident that gave rise to this action occurred at approximately 9:35 p.m. on October 21, 1996, while Marshall was in custody at the MCC awaiting trial. On that occasion Marshall was using the MCC's public telephone. (Declaration of Danielle Ginten, dated July 30, 2002 ("Ginten Decl.") Ex. C, attached to Memorandum of Law in Support of Defendants' Motion for Summary Judgment, dated July 30, 2002). He was approached by Bryan Thompson, another MCC inmate who was unknown to Marshall, who told Marshall to get off the phone so he could use it. Marshall responded that he would do so when he finished his call, and continued talking. Marshall alleges that at that time one of the MCC correction officers was walking up the steps nearby and heard the exchange and continued to walk away. Thompson left, returned later and again asked Marshall to get off the phone. Marshall repeated he would do so when he finished his call. He asserts that he was then struck over the back of the head, allegedly with an metal pipe that he contends was taken from a piece of the iron parts used to hold the bunk beds together at the MCC.

Marshall was examined at the MCC health services shortly after the assault. The medical care report of the incident indicates that Marshall was alert, ambulatory and not in acute distress. (*Id.* Ex. D) He was given an ice pack and Tylenol. On three subsequent examinations by MCC health services staff during the following three weeks, Marshall reported suffering from headaches, but showed no apparent sign of distress or contusion. (*Id.* Ex. A.)

In response to the instant motion, Marshall contends that:

> [t]he Government should have foreseen that Plaintiff was or could have become victim to intentional tort conduct arising from other Inmates [sic] actions and the negligent failure by Defendant to protect or prevent such action and or injury to plaintiff, is a breach of that duty . . . .

(Memorandum of Law in Support of Plaintiff's Response to Motion for Summary Judgment, dated December 8, 2002, at 5.)

## II. DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

In considering a motion for summary judgment, a court may grant the motion only if, on the basis of the record of the pleadings, depositions, answers to interrogatories and admissions, together with any affidavits filed, it concludes that there is no genuine dispute as to any material fact and, that, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Whidbee v. Garzarelli Food Specialties, Inc.,* 223 F.3d 62, 68 (2d Cir.2000). The role of the court in ruling on such a motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

The moving party bears the initial burden of establishing the basis for the motion and identifying those portions of the materials on the record that demonstrate the absence of a genuine issue of material fact. *See Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Koch v. Town of Brattleboro,* 287 F.3d 162, 165 (2d Cir.2002). In this regard, "[o]nly

disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In weighing whether the movant has satisfied this threshold, the court must view the record as a whole in the light most favorable to the opponent of the motion. *See id.* at 255, 106 S.Ct. 2505. The movant may meet this initial burden by demonstrating the absence of evidence sufficient to support an essential element of the opponent's underlying claim. *See LaBounty v. Coughlin,* 137 F.3d 68, 73 (2d. Cir.1998).

If the court finds that the moving party has satisfied his initial burden of persuasion, the opponent must then "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To this end, the opponent "may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998). Rather, he must support with specific evidence his assertion that a genuine dispute as to material fact does exist. *See Celotex,* 477 U.S. at 324, 106 S.Ct. 2548.

The opposing party's showing of a genuine dispute must be grounded on concrete evidence sufficient to support a reasonable jury's rendering a verdict in his favor. *See Anderson,* 477 U.S. at 248, 252, 106 S.Ct. 2505 ("The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient."); *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348.

## B. *NEGLIGENCE CLAIM*

■ The FCTA authorizes actions against the Government for damages arising from injury "caused by the negligent or wrongful act or omission of any employ-ee of the Government while acting within the scope of his office or employment. . . ." 28 U.S.C. § 1346(b)(1). The assessment of liability for negligence is to be made "[i]n accordance with the law of the place where the [tortious] act or omission occurred." *Id.; Mortise v. United States,* 102 F.3d 693, 696 (2d Cir.1996).

■ The essence of Marshall's theory is that the Government is liable for the injuries he sustained from Thompson's attack because it was negligent in failing to provide adequate protection and prevent the assault. The Government counters that Marshall's claim amounts to an attempt to transform an assault or battery committed by a private third party into a negligence action against the Government for failing to avert the attack, so as to overcome the FTCA's exception to waiver of sovereign immunity for intentional torts. *See Mortise,* 102 F.3d at 696 (noting that § 2680(h) of the FTC "expressly refuses to waive sovereign immunity for any claims arising out of assault or battery.") The Court agrees.

Marshall's claim is grounded on Thompson's attack during a private dispute between the two inmates over the use of a public telephone. While Marshall alleges that an MCC corrections officer witnessed the first exchange between Marshall and Thompson, he presents no evidence whatsoever that the officer or any other MCC official saw Thompson carrying a pipe; or knew of any prior incident or existing relationship that could have given the MCC officer reasonable grounds to foresee what Thompson might do; or witnessed any aspect of the assault from any vantage point that reasonably would have provided an opportunity to prevent Marshall's injury. Marshall in fact conceded that prior to the incident he had never met Thompson. (*See* Gentin Decl. Ex. B, at 12.) Absent specific evidence to support his contention,

Marshall's speculative or conclusory assertion to the contrary is insufficient to defeat the Government's motion for summary judgment. *See Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Scotto,* 143 F.3d at 114.

Without a sufficient showing that Thompson's assault against Marshall was reasonably foreseeable and avoidable, there is no evidentiary basis to support a rational determination that Marshall has satisfied the requirements of an action for negligence under New York law, an essential element of which is defendant's breach of a duty owed to plaintiff that causes a reasonably foreseeable injury to plaintiff. *See Akins v. Glens Falls City Sch. Dist.,* 53 N.Y.2d 325, 441 N.Y.S.2d 644, 424 N.E.2d 531, 535 (N.Y.1981); *see also Smith v. Chief Exec. Off.,* No. 00 Civ. 2521, 2001 WL 1035136, at *5–6 (S.D.N.Y. Sept.7, 2001); *Leibach v. State,* 215 A.D.2d 978, 627 N.Y.S.2d 463, 464 (N.Y.App. Div.3d Dept.1995). Consequently, Marshall's suit reduces to nothing more than a claim for assault and battery.

■ Courts in this Circuit have held uniformly that § 2680(h) of the FTCA "prohibits claimants from clothing assault and battery actions in the garb of negligence by claiming negligent failure to prevent [an] attack." *Johnson v. United States,* 788 F.2d 845, 850 (2d Cir.1986), *cert. denied,* 479 U.S. 914, 107 S.Ct. 315, 93 L.Ed.2d 288 (1986); *see also Guccione v. United States,* 847 F.2d 1031, 1034 (2d Cir.1988), *reh'g denied,* 878 F.2d 32 (2d Cir.1989), *cert. denied,* 493 U.S. 1020, 110 S.Ct. 719, 107 L.Ed.2d 739 (1990); *Lambertson v. United States,* 528 F.2d 441, 445 (2d Cir.1976), *cert. denied,* 426 U.S. 921, 96 S.Ct. 2627, 49 L.Ed.2d 374 (1976).

## C. *MEDICAL CARE CLAIM*

Marshall asserts in his Amended Complaint that as a result of Thompson's attack he sustained "head trauma, deep lacerations and contusions as well as mental and psychological injuries," including post traumatic stress disorder, headaches, and insomnia, and that he received "little medical attention" for these conditions. (Gentin Decl. Ex. A at IV, IV–A.)

Marshall's inadequate medical care allegation, viewed in the light most favorable to him as a *pro se* plaintiff and construed to intend the most viable claims it expresses, *see Garcia v. West,* No. 98 Civ. 3905, 1999 WL 782563, at *3 (S.D.N.Y. Sept. 30, 1999) ("A complaint and supporting papers prepared by a pro se plaintiff must be read liberally and construed so as to raise the strongest arguments they suggest."), may be read to suggest: (1) a deprivation of a constitutional right by Government officials acting under color of federal law; (2) deliberate indifference under the Eighth Amendment of the United States Constitution, or (3) medical malpractice under state law. Neither theory is sufficiently supported on the record before the Court to survive a motion for summary judgment.

■ First, when Marshall filed his original complaint in this case, the Court read it as an action submitted under *Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcs.,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). *See Marshall v. Metropolitan Corr. Ctr.,* No. 99 Civ. 3877, slip op. (S.D.N.Y. May 27, 1999). The Court then held that Marshall's action would not be construed under *Bivens* because: (1) it was not brought against any individual federal agents or employees, but against the Government through a federal agency, and (2) a claim that a prison official negligently failed to protect an inmate from injury is not cognizable under *Bivens,* and thus such acts do not violate the United States Constitution. *See id.* at 2 (citing *Daniels v. Williams,* 474 U.S. 327, 328, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), *Davidson v. Cannon,* 474 U.S. 344, 347–48, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986), and

*Hayes v. New York City Dept. of Corrections*, 84 F.3d 614, 620 (2d Cir.1996)).

■ Second, Marshall's statement of the injuries he allegedly sustained, and his conclusory assertion that he received "little medical attention" from the Government to treat his various wounds and disorders, are not supported by the record before the Court. Marshall has adduced no expert medical evidence confirming any of the conditions which he alleges having suffered.

In fact, the MCC health services unit's Record of Medical Cases prepared shortly after Marshall's injury, reported that Marshall was alert and ambulatory, and in no acute distress. (*See* Gentin Decl. Exs. D, I.) An examination conducted nine days later indicated that while Marshall complained of headaches there was "no apparent distress"; "no echymosis"; "no external signs present"; "no contusion noted." (*Id.* Ex. F.) Six days later, a report of another examination noted no blurred vision or vomiting. (*Id.*) On each occasion, Marshall was provided pain relievers.

Moreover, a review of Marshall's full chronological medical record performed by a neurologist retained by the Government, reported that between October 21, 1996 and the end of December 1996, Marshall made 12 visits for treatment at the MCC health services unit. Though he complained of back and shoulder pain and headaches, there is no notation on any of these occasions of Marshall showing any sign of apparent distress, disorientation or loss of consciousness. (*Id.* Ex. I.) Following a subsequent examination, Marshall underwent a cat scan of the brain on January 13, 1997, the result of which indicated no abnormality. (*Id.* Exs. I, J.)

On June 12, 1997, Marshall was given a psychiatric examination, which revealed that he had a history of multiple gunshot wounds to the head, shoulder and back as well as various other injuries and traumas prior to 1996, including some related to an automobile accident. The Government expert's report documenting the continuous medical treatment Marshall received on numerous occasions each year from 1997 through 1999, observed that Marshall:

> [s]ustained no significant head injury as a result of the incident on October 21, 1996. He has been examined on several occasions and no neurologic deficit was [sic] been found. He was examined on multiple occasions by multiple professionals who always noted him to be in no apparent distress, to be fully oriented, and was noted on several occasions to have a normal neurologic examination.

(Id.Ex. I.) The report concludes that the treatment Marshall received was appropriate in light of his medical history.

■ On this record, there is no evidence that Marshall could reasonably support an action establishing the elements of a claim of deliberate indifference under the standards articulated in *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ("In order to state a cognizable claim, a prisoner must allege acts. or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."); *see also Williams v. Vincent*, 508 F.2d 541, 544 (2d Cir.1974). Nor does anything in the record indicate that Marshall can meet his burden of proof to support a claim for medical malpractice under New York law. Such an action would require evidence sufficient to establish a deviation from accepted practice and that such departure was a proximate cause of the injury in question. *See Holton v. Sprain Brook Manor Nursing Home*, 253 A.D.2d 852, 678 N.Y.S.2d 503 (N.Y.App. Div.2d Dept.1998). The Court finds no such evidence on the record before it.

Accordingly, the Court concludes that Marshall has failed to establish the existence of a genuine issue of material fact

that requires a trial of this action. The Government is therefore entitled to summary judgment.

### III. *ORDER*

For the reasons described above, it is hereby

**ORDERED** that the Government's motion for summary judgment dismissing the complaint herein is GRANTED.

The Clerk of Court is directed to close this case.

SO ORDERED.