**Ernest TUSINO, Plaintiff–Appellee,**

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, Defendant–Appellant.**

**No. 04–6488–CV.**

United States Court of Appeals, Second Circuit.

Feb. 24, 2006.

---

Eric R. Greene (Hope Pordy, Denis P. Duffey, Jr., Robert K. Fitzpatrick, on the brief), Spivak, Lipton, Watanabe, Spivak,

Moss & Orfan LLP, New York, NY, for Appellant.

Charles J. Brucato, Consigli and Brucato, P.C., Milford, MA, for Appellee.

PRESENT: Hon. WILFRED FEINBERG, Hon. GUIDO CALABRESI, and Hon. BARRINGTON D. PARKER, Circuit Judges.

### SUMMARY ORDER

At a stated term of the United States Court of Appeals for the Second Circuit, held at the United States Courthouse, Foley Square, in the City of New York, on the twenty-fourth day of February, two thousand and six.

ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby AFFIRMED IN PART, VACATED IN PART, AND THE CASE IS REMANDED FOR FURTHER PROCEEDINGS AND ENTRY OF A REVISED JUDGMENT.

Defendant-appellant International Brotherhood of Teamsters ("IBT") appeals from a judgment of the United States District Court for the Southern District of New York (Loretta A. Preska, Judge), entered in June 2004. This case started in March 1996 with the filing of a complaint by plaintiff-appellee Ernest Tusino ("Tusino") alleging breach of contract, libel and slander, and violations of section 101(a) of the Labor–Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 411(a) (2000). The district court granted summary judgment for defendants, and Tusino appealed. In June 2002, this Court issued a summary order affirming in part and vacating in part. See *Tusino v. Int'l Bhd. of Teamsters,* 38 Fed.Appx. 91 (2d Cir.2002). The order vacated the judgment as to the LMRDA claim and remanded for further proceedings. 38 Fed.Appx. at 95. After a subsequent bench trial on that claim, Judge Preska found that IBT had violated LMRDA section 101(a)(2) when the IBT General President suspended Tusino from his position as secretary treasurer of IBT Local 170 as part of a scheme to suppress dissent within the union. The judge awarded Tusino $551,481.00 in damages for lost wages, pension increases, annuity, medical insurance and car payments; $250,000 in emotional distress and reputation damages; $50,000 in punitive damages; $93,220.00 in attorney's fees; $4,271.72 in expenses; and $507,106.91 in prejudgment interest. On appeal, IBT contests liability and the award for damages, attorney's fees and prejudgment interest. We assume familiarity with the foregoing factual and procedural background.

### 1. Liability

"Following a bench trial, we will not upset a district court's factual findings unless we are left with the definite and firm conviction that a mistake has been committed." *Raishevich v. Foster,* 247 F.3d 337, 343 (2d Cir.2001) (internal quotation marks omitted). We review a district court's conclusions of law de novo, *id.,* and evidentiary rulings for abuse of discretion, *Marcic v. Reinauer Transp. Cos.,* 397 F.3d 120, 124 (2d Cir.2005).

LMRDA section 101(a)(2) protects the speech rights of labor union members. A member's removal from an office-holding position violates section 101(a)(2) if the removal was part of a " 'purposeful and deliberate attempt ... to suppress dissent within the union.' " *Maddalone v. Local 17, United Bhd. of Carpenters,* 152 F.3d 178, 184 (2d Cir.1998) (alteration in original) (quoting *Schonfeld v. Penza,* 477 F.2d 899, 904 (2d Cir.1973)). The former officer must present clear and convincing evi-

dence that the removal was "part of a series of oppressive acts by the union leadership that directly threaten the freedom of members to speak out." *Cotter v. Owens*, 753 F.2d 223, 229 (2d Cir.1985).

The parties stipulated that in 1994 an Ethical Practices Committee ("EPC") Panel appointed by then-General President Ronald Carey ("Carey") to hear disciplinary charges against Tusino unanimously recommended dismissing the charges, but Carey nevertheless issued a decision suspending Tusino from all offices, including his position as secretary treasurer, for two years and from IBT membership for three months. The judge found that this decision was "truly extraordinary" because it issued "a day or so" after a local newspaper published a photograph of Tusino with James Hoffa—Carey's recognized opponent in the next national election to be IBT president—and because the evidence "disclosed no other outright reversal by Mr. Carey of a decision of the EPC."[1]

The district court also found that voice votes held at the 1996 national IBT convention regarding the disciplinary appeals of Tusino and Frank Wsol, who was also a known Hoffa supporter, actually went in favor of Tusino and Wsol, but were called the opposite way by Carey. In addition, the district court found that strong-arm tactics intimidated delegates into voting against Tusino in the subsequent "division of the house" vote. That vote required delegates to exit the convention hall and then re-enter through either of two sets of doors designated "yes" or "no," thus making transparent the identity of the voters and the substance of their votes. The court credited testimony that "Mr. Carey had a couple of goons standing there telling the people not to go through [the] door" indicating support for Tusino. The court also credited testimony that particular convention delegates known to be Tusino supporters were intimidated into voting against Tusino.

■ IBT argues that the district court clearly erred in these findings. Judge Preska made her detailed findings based on the mostly unrebutted testimony of Tusino and James Fiori (a former officer of IBT Local 170), both of whom she found "to be very credible witnesses." Considering a district judge's discretion to evaluate testimony, we cannot say that her findings were clearly erroneous.

IBT also argues that the district court abused its discretion by admitting oral testimony regarding the 1996 convention. The essence of IBT's argument is that it was taken by surprise when Tusino presented the evidence at trial; IBT claims it had no notice that the convention proceedings were relevant to Tusino's claims. The district court rejected IBT's notice argument at trial because the convention minutes were already in evidence, having been stipulated to by both parties as Joint Exhibit 27. Moreover, IBT did not request a continuance at trial. Given these considerations, the district court acted within its discretion in allowing the testimony.

In sum, the district court's factual findings are not clearly erroneous and establish that the IBT engaged in a purposeful

---

1. IBT attacks Judge Preska's statement that the evidence "disclosed no other outright reversal by Mr. Carey of a decision of the EPC" by referring us to Carey's decision to discipline Rondel Owens. Whether Carey's decision disciplining Tusino was the only outright reversal of the EPC or whether it had happened once before is not the point: the impo-

sition of punishment over the contrary recommendation of a unanimous EPC was markedly unusual. Moreover, even assuming that Judge Preska overstated the rarity of this occurrence, other findings made on the record support her characterization of Carey's decision.

and deliberate scheme to suppress dissent. Keeping in mind that "a dissenting faction need not endure years of harassment before a § 102 claim will lie," *Maddalone*, 152 F.3d at 184, the findings are sufficient to support liability.

2. Damages, Attorney's Fees and Prejudgment Interest

IBT contests several aspects of the damages, attorney's fees and prejudgment-interest award.

■ (a) IBT argues that the district court erred by awarding damages for lost wages, pension increases and other economic benefits on the basis of its finding that Tusino would have been reelected as secretary treasurer of IBT Local 170. The district court did not clearly err in its finding. Rather, the judge made permissible inferences based on Tusino's prior history and his subsequent election as president of the credit union. She did so after considering contrary evidence presented by IBT and rejecting that evidence in light of both its content and "the attitude and demeanor" of IBT's witnesses. The damages for lost wages, pension increases and other economic benefits were therefore justified.

■ (b) We do, however, agree with IBT that the $250,000 in damages awarded to compensate Tusino for his emotional distress and reputational harm is grossly excessive. The district court relied upon testimony by Tusino and his daughter regarding Tusino's sense of embarrassment and loss of sleep, weight and appetite. However, Tusino did not seek medical attention for these problems, and the record contains no objective testimony other than photographs and medical charts showing some weight loss. We therefore reduce the emotional distress and reputational damages to $100,000. See *Petramale v. Local No. 17 of Laborers' Int'l Union*, 847

F.2d 1009, 1013 (2d Cir.1988) (remitting jury-determined LMRDA compensatory damages award of $200,000 to $100,000 where plaintiff did not seek medical help for nerves and sleeplessness); cf. *Mathie v. Fries*, 121 F.3d 808, 816–17 (2d Cir.1997) (exercising appellate authority to reduce excessive punitive damages award after bench trial).

■ (c) IBT also argues that the district court abused its discretion by awarding punitive damages. The punitive damages award is not grossly excessive or otherwise inappropriate. See *Maddalone*, 152 F.3d at 186 ("[P]unitive damages are available to deter malicious violations of the LMRDA . . . .").

(d) IBT further claims that the district court improperly awarded attorney's fees to Tusino. In doing so, however, the district court acted well within its discretion. See *Local Union No. 38, Sheet Metal Workers' Int'l Ass'n v. Pelella*, 350 F.3d 73, 90 (2d Cir.2003) (reviewing attorney's fees award to LMRDA plaintiff for abuse of discretion).

(e) Finally, IBT challenges the $507,106.91 prejudgment-interest award. We review an award of prejudgment interest for abuse of discretion. *Commercial Union Assurance Co. v. Milken*, 17 F.3d 608, 613 (2d Cir.1994). The judgment describes the award as "[i]nterest at 9% applicable only to compensatory and reputation damages from March 26, 1996 (the commencement of the action) to April 13, 2001 (dismiss on defendants' motion for summary judgment) and from June 10, 2002 (mandate issued on remand from Court of Appeals) to the date of entry of judgment." The district court also stated in its damages decision that "[p]rejudgment interest will be awarded at the statu-

**44**

tory rate,"[2] but otherwise did not explain its calculations. IBT argues that the district court abused its discretion by awarding prejudgment interest for compensatory damages before the date they were incurred, by awarding prejudgment interest at a constant rate instead of a fluctuating rate, and by awarding prejudgment interest for emotional distress and reputation damages.

"Awards of prejudgment interest must not result in over-compensation of the plaintiff." *Wickham Contracting Co. v. Local Union No. 3, Int'l Bhd. of Elec. Workers*, 955 F.2d 831, 834 (2d Cir.1992); see also *West Virginia v. United States*, 479 U.S. 305, 310 n. 2, 107 S.Ct. 702, 93 L.Ed.2d 639 (1987) ("Prejudgment interest serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress."). "Where prejudgment interest is given, it should be assessed upon damages only as they become due." *Chandler v. Bombardier Capital, Inc.*, 44 F.3d 80, 84 (2d Cir.1994). Furthermore, " 'an award of pre-judgment interest is not appropriate with respect to an award of damages for future losses.' " *Gordon v. Matthew Bender & Co.*, 186 F.3d 183, 186 (2d Cir.1999) (per curiam) (quoting *Gierlinger v. Gleason*, 160 F.3d 858, 875 (2d Cir.1998)). "So long as the district court's award of interest generally reflects a level that roughly and fairly compensates" the plaintiff, *United States v. Seaboard Sur. Co.*, 817 F.2d 956, 967 (2d Cir.1987), it is not an abuse of discretion for a district court to devise a method for calculating interest that "avoid[s] the need for numerous calculations establishing a separate interest fig-

ure for each lost monthly payment," *Chandler*, 44 F.3d at 84 (finding such a method within district court's discretion where lower federal rate of statutory interest was applied).

We cannot be sure on this record whether the district court's award fits within these general principles. We therefore vacate that portion of the district court judgment dealing with prejudgment interest and remand for further proceedings on this issue pursuant to *United States v. Jacobson*, 15 F.3d 19, 21–22 (2d Cir.1994). This will allow the district court to consider the issue further, after giving the parties an opportunity to present arguments—and if the judge thinks it appropriate, evidence—and to enter a revised judgment. The mandate shall issue forthwith, but we will retain jurisdiction so that either party may seek further appellate review by notifying the Clerk of the Court in writing within 30 days of entry of the district court's judgment on remand. Upon such notification, which will not require the filing of a new notice of appeal, the matter will be referred to this panel for disposition.

We have considered all of appellant's arguments and, except as set forth above in paragraphs 2(b) and (e), we find them to be without merit. The judgment of the district court is AFFIRMED in part, VACATED in part, and the case is REMANDED for further proceedings and entry of a revised judgment.

---

2. The district court presumably referred to 28 U.S.C. § 1961, the statute setting post-judg-

ment interest rates.